[No. S053934. July 3, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT VONROSKI DAVIS, Defendant and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Joan Killeen, Deputy Attorneys General, for Plaintiff and Appellant.

Janice M. Brickley, under appointment by the Supreme Court, for Defendant and Respondent.

Francis J. Bardsley, Public Defender (San Diego), Greg S. Maizlish, Deputy Public Defender, Loren Warboys and Susan L. Burrell as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BROWN, J.**—We granted review in this case to consider (1) whether for a prior juvenile adjudication to qualify as a "strike," the juvenile court must have expressly found the juvenile "to be a fit and proper subject to be dealt with under the juvenile court law" (Pen. Code,[1] § 667, subd. (d)(3)(C)), and (2) whether a prior juvenile adjudication for residential burglary qualifies as a "strike" (§ 667, subd. (d)(3)). We conclude that no express finding of fitness is required, and that under the circumstances of this case we need not reach the issue of whether a prior juvenile adjudication for residential burglary qualifies as a "strike." Accordingly, we affirm the judgment of the Court of Appeal.

### I. FACTS AND PROCEDURAL BACKGROUND

By information filed on June 8, 1994, the Contra Costa County District Attorney charged defendant Robert Vonroski Davis (defendant) with one count of murder (§ 187), and one count of attempted murder (§§ 187, 664) with allegations as to both counts that he personally used a handgun (§ 12022.5, subd. (a)). In addition, three prior convictions were alleged under section 667, subdivisions (b)-(i) (the legislative version of the three strikes law): a 1990 juvenile adjudication of felony assault (§ 245); a 1991

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

juvenile adjudication of residential burglary (§ 459, former § 460.1 [now § 460, subd. (a)]); and a 1993 adult robbery conviction (§ 211). Defendant pled not guilty and denied the prior conviction allegations.

Defendant subsequently moved to strike the two prior juvenile adjudications in part on the ground that they did not satisfy the terms of section 667, subdivision (d)(3). The trial court granted the motion.

The People appealed. While the appeal was pending, a jury convicted defendant of murder and attempted murder. The prior robbery conviction allegation was found true. Defendant was sentenced to 35 years to life with a consecutive term of life plus 5 years.

The Court of Appeal affirmed the trial court's order striking the prior juvenile adjudication for residential burglary and reversed the trial court's order striking the prior juvenile adjudication for felony assault. On that same day, the court affirmed in a separate opinion defendant's convictions for murder and attempted murder.

We granted both the Attorney General's and defendant's petitions for review limited to the issues stated above, and subsequently designated the Attorney General petitioner for purposes of briefing and oral argument.

## II. Discussion

"In March 1994, the Legislature enacted its version of the 'Three Strikes and You're Out' law by amending section 667. In general, the legislation provides longer sentences for certain prior serious or violent felonies popularly denoted 'strikes.' A 'two strike' case involves one prior qualifying felony; a 'three strike' case involves two or more prior qualifying felonies. Predicate prior felonies are defined in section 667, subdivision (d), as: '(1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state'; '(2) A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison [and] . . . includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7'; and '(3) [Certain] prior juvenile adjudication[s].' " (*People v. Hazelton* (1996) 14 Cal.4th 101, 104 [58 Cal.Rptr.2d 443, 926 P.2d 423].) The statute's unambiguous purpose is to provide greater punishment for recidivists. (§ 667, subd. (b).)

Section 667, subdivision (d)(3),[2] lists the requirements for a prior juvenile adjudication to qualify as a "strike." It provides:

"[(d)](3) A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if:

"(A) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

"(B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) [California prior serious or violent felony convictions] or (2) [other jurisdiction prior serious or violent felony convictions] as a felony.

"(C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law.

"(D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

■■■ Defendant contends that neither his prior juvenile adjudication for residential burglary nor for felony assault meets the requirements of section 667, subdivision (d)(3)(C) (subdivision (d)(3)(C)), because there was no express finding of fitness. Defendant further contends that his prior juvenile adjudication for residential burglary does not meet the requirements of section 667, subdivision (d)(3)(D), because that offense is not included in Welfare and Institutions Code section 707, subdivision (b), as it existed on June 30, 1993 (former section 707(b)).[3]

We first consider the meaning of subdivision (d)(3)(C)'s requirement that the juvenile was "found to be a fit and proper subject to be dealt with under the juvenile court law." Defendant contends that an express finding of fitness is required; the Attorney General asserts that an implied finding is sufficient. We agree with the Attorney General.

Under Welfare and Institutions Code section 602, "Any person who is under the age of 18 years when he violates any law of this state or of the

---

[2]Section 1170.12, subdivision (b)(3), the November 1994 initiative version of the three strikes law, contains a virtually identical provision.

[3]All references to statutes in the three strikes law are to "statutes as they existed on June 30, 1993." (§ 667, subd. (h).)

United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." █ A petition under this section "is the equivalent of a complaint in the adult court." (1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 1.8, p. 22.) █ The prosecutor may, however, also file a petition under Welfare and Institutions Code section 707 seeking a determination that the minor is unfit for treatment in the juvenile court system. (Welf. & Inst. Code, § 707, subds. (a), (c).) When the juvenile is charged with a crime falling within former section 707(b), and a Welfare and Institutions Code section 707 petition is filed, the minor is "presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes . . . that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of" various criteria. (Welf. & Inst. Code, § 707, subd. (c).) If the juvenile court makes a finding of fitness, it makes "[a] determination that the minor is a fit and proper subject to be dealt with under the juvenile court law . . . ." (*Ibid.*)

Thus, the only circumstance under which an express finding of fitness occurs in juvenile court is when the prosecutor unsuccessfully seeks to have the juvenile tried in adult court. Defendant therefore contends that the "use of this precise language which is only used within the context of a [section] 707 petition must have been intended as a requirement that there have been a fitness hearing and evaluation with supporting findings."

We disagree. An express finding of fitness is necessary in the context of a ruling on a Welfare and Institutions Code section 707 petition based on a former section 707(b) offense because the minor is presumed to be unfit. (Welf. & Inst. Code, § 707, subd. (c).) Thus, the juvenile court must explain why the presumption of unfitness was rebutted in that particular case.

Subdivision (d)(3)(C), however, refers neither to a Welfare and Institutions Code section 707 petition nor to an express finding of fitness. Rather, it merely requires that the juvenile was "found to be a fit and proper subject to be dealt with under the juvenile court law." This, of course, includes the situation where a Welfare and Institutions Code section 707 petition based on a former section 707(b) offense was denied. It also reasonably includes the situation where the prosecutor does not file a Welfare and Institutions Code section 707 petition. As the Court of Appeal recognized, "[p]roceedings under section 602 with the resulting adjudication of wardship and treatment of the minor under the jurisdiction of the juvenile court constitute[] an implied finding that the minor is a 'fit and proper subject to be dealt

with under the juvenile court law.'" By its terms, subdivision (d)(3)(C) requires a finding, not an express finding, of fitness. Accordingly, nothing in the subdivision's language precludes the inclusion of implied as well as express findings of fitness. Moreover, the suitability requirement helps distinguish those offenses committed by minors 16 or over that are adjudicated in juvenile court rather than as adult offenses. Indeed, if subdivision (d)(3)(C) were construed to require an express finding of fitness, this would so severely limit those juvenile adjudications that would qualify as "strikes," that such a result would seem to be at odds with the intent of section 667, subdivisions (b)-(i).

Finally, a conclusion that subdivision (d)(3)(C) requires an express finding of fitness would evoke questions regarding the statute's constitutional validity. The difference in punishment that two otherwise similarly situated defendants would receive would depend solely on an *unsuccessful* motion for a determination that the minor is unfit for treatment in the juvenile court system. An express finding requirement would be analogous to a statute that set the punishment for a manslaughter conviction at five years if the prosecution originally charged the case as manslaughter, but ten years if the prosecution originally charged the case as murder and the defendant was convicted of the lesser charge of manslaughter. Such a statute would arguably be open to a variety of constitutional challenges such as equal protection, due process, and separation of powers. We see no basis for concluding that the Legislature made such an arguably irrational distinction here.

Defendant asserts that concluding an implied finding satisfies subdivision (d)(3)(C) renders that subdivision superfluous. He essentially argues that subdivision (d)(3)(C) would then apply to anyone tried in juvenile, as opposed to adult court, and subdivision (d)(3) already expressly applies to prior juvenile adjudications. However, the presence of some duplication in a multiprong statutory test does not automatically render it meaningless. Moreover, subdivision (d)(3) is arguably superfluous in part no matter how we interpret it. If we interpret it, as defendant argues, to require an express finding of fitness, then the requirement that the juvenile was 16 years old at the time of committing the offense is redundant. (§ 667, subd. (d)(3)(A).) As the statute existed on the relevant date, June 30, 1993 (§ 667, subd. (h)), only juveniles who were 16 years old at the time of committing the offense could be treated as adults, and thus there could only be an express fitness finding as to those juveniles. (Former Welf. & Inst. Code, § 707, subd. (c); see also former § 707, subd. (a).) Thus, merely discerning that parts of the statute are repetitive does little to inform our analysis of its content. For the reasons set forth above, we conclude the more reasonable interpretation is that an implied finding of fitness satisfies subdivision (d)(3)(C). The trial court

therefore erred in striking defendant's prior juvenile adjudications for felony assault and residential burglary on this ground.

Given our conclusion on this issue, defendant has at least two "strikes," i.e., a 1990 juvenile adjudication of felony assault, and a 1993 adult robbery conviction. He thus already qualifies for the harsher punishment prescriptions of the three strikes statute. We decline under these circumstances to decide whether defendant's juvenile adjudication for residential burglary also counts as a "strike." We therefore leave this issue for another day.

CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., and Chin, J., concurred.

**MOSK, J.**—I dissent.

Defendant was charged by information in the superior court with murder and attempted murder. For enhancement of sentence, he was alleged to have personally used a firearm in each. For the same purpose, under the legislative version of the so-called "Three Strikes" law (Stats. 1994, ch. 12, §§ 1-2), which is codified in Penal Code section 667, subdivisions (b) to (i) (hereafter sometimes section 667(b) to (i)),[1] he was alleged to have suffered the following "strikes": (1) a prior juvenile adjudication, under section 667(d)(3), for assault; (2) a prior juvenile adjudication, also under section 667(d)(3), for residential burglary; and (3) a prior felony conviction, under section 667(d)(1), for robbery. Defendant moved to dismiss both of the prior juvenile adjudication allegations. The superior court granted the motion and entered an order accordingly. In its judgment on appeal, the Court of Appeal affirmed as to residential burglary, but reversed as to assault.

The majority now proceed to affirm the Court of Appeal's judgment, specifically, its reversal of the superior court's order dismissing the prior juvenile adjudication allegation as to assault.

As I shall explain, they should not.

I

Section 667(c) provides that, "[n]otwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that" he

---

[1]The initiative version of the Three Strikes law (Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994)), which was enacted later but is "nearly identical" (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628]), is codified in Penal Code section 1170.12.

"has one or more prior felony convictions as defined in" section 667(d), "the court shall" sentence him as specified in section 667(b) to (i), which codify the Three Strikes law.

Section 667(d) states that, "[n]otwithstanding any other law and for the purposes of" section 667(b) to (i), "a prior conviction of a felony shall be defined" to include particular prior juvenile adjudications.

Section 667(d)(3), with which we are centrally concerned, further states:

"A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement"—that is, shall amount to a strike—"if:

"(A) The juvenile was 16 years of age or older at the time he or she committed the prior offense.

"(B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code"—and therefore presumptively warranted trial of the juvenile in criminal court as an adult and not adjudication in juvenile court as a minor—or is "described . . . as a felony" in section 667(d)(1) or (d)(2). (Section 667(d)(1) covers "violent" (Pen. Code, § 667.5, subd. (c)) and "serious" (*id.*, § 1192.7, subd. (c)) felonies under California law. Section 667(d)(2) covers "[a] conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined" as a "violent" or "serious" felony in California.)

"(C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law.

"(D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (Pen. Code, § 667, subd. (d)(3).)

It follows that section 667(d)(3) states four requirements that must be satisfied for a prior juvenile adjudication to qualify as a strike.

First, under section 667(d)(3)(A), the juvenile must have been at least 16 years old when he committed the offense resulting in the prior juvenile adjudication.

Second, under section 667(d)(3)(B), the offense resulting in the prior juvenile adjudication must be one of the following: (1) the offenses listed in Welfare and Institutions Code section 707, subdivision (b), which are presumptively "adult-criminal" in nature (hereafter Welfare and Institutions Code section 707(b) offenses); (2) California "violent" or "serious" felonies; and (3) specified out-of-state felonies. This provision thereby defines the substantive scope of possible strikes for prior juvenile adjudications.

Third, under section 667(d)(3)(C), the juvenile must have been found by the juvenile court to be fit for juvenile court proceedings as a minor.

Fourth and final, under section 667(d)(3)(D), the juvenile must have been adjudged by the juvenile court to have committed at least one, presumptively "adult-criminal," Welfare and Institutions section 707(b) offense. This provision thereby imposes a procedural precondition for any actual strike for prior juvenile adjudications within the substantive scope of possible ones.

## II

Section 667(d)(3)(C) states one of the four requirements that must be satisfied for a prior juvenile adjudication to qualify as a strike under the Three Strikes law—viz., the juvenile must have been found by the juvenile court to be fit for juvenile court proceedings as a minor.

The juvenile court makes a finding of fitness only under Welfare and Institutions Code section 707. It does that only after it conducts a hearing on fitness. (See Welf. & Inst. Code, § 707.) It does *that* only pursuant to a motion raising a doubt about fitness. (See *id.*, subd. (a).) The motion may be made by the prosecutor. (See *ibid.*) It may also be made by the juvenile court *ex mero motu.* (*Green* v. *Municipal Court* (1976) 67 Cal.App.3d 794, 798-804 [136 Cal.Rptr. 710].) And it may even be made by the juvenile himself. (E.g., *Joey W.* v. *Superior Court* (1992) 7 Cal.App.4th 1167, 1171-1173 [9 Cal.Rptr.2d 486]; *In re Rodney F.* (1988) 203 Cal.App.3d 177, 181-186 [249 Cal.Rptr. 424].)

To repeat: Section 667(d)(3)(C) requires a finding of fitness. That is what its words mean. That is the beginning of the matter and its end. (See *Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.).) We may not pass on the wisdom of statutes. (See, e.g., *People* v. *Zapien* (1993) 4 Cal.4th 929, 954 [17 Cal.Rptr.2d 122, 846 P.2d 704]; *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1099 [282 Cal.Rptr. 841, 811 P.2d 1025].) Of course, we may not evaluate the general end that the Legislature has sought,

which, according to its expressed intent, is "to ensure longer prison sentences and greater punishment" for certain recidivists under certain conditions (Pen. Code, § 667, subd. (b)). But neither may we assess the specific means that it has chosen—which include the requirement of a finding of fitness.

In this cause, the superior court properly dismissed both the residential burglary and assault prior juvenile adjudication allegations. As to each, the finding of fitness required by section 667(d)(3)(C) is lacking. As to neither was there any motion raising a doubt about fitness; as to neither was there any hearing on fitness; and as to neither, as stated, was there any finding of fitness.

Beneath their discussion purporting to consider whether a finding of fitness must be express or may also be implied,[2] the majority remove the very requirement of such a finding contained in section 667(d)(3)(C) by construing it away. They do not demand any motion raising a doubt about fitness; they do not demand any hearing on fitness; and, as stated, they do not demand any finding of fitness. All that they ask for is a prior juvenile adjudication against a juvenile who was at least 16 years old when he committed the offense in question. But that is already required by section 667(d)(3)(A). They say that section 667(d)(3)(C) "helps distinguish those offenses committed by minors 16 or over that are adjudicated in juvenile court rather than as adult offenses." (Maj. opn., *ante*, at p. 1102.) It does not. Section 667(d)(3)(A) and (d)(3)(D) make that distinction. They need no help.[3]

The majority attempt to justify their removal of the requirement of a finding of fitness contained in section 667(d)(3)(C) by arguing that the retention of such a requirement "would so severely limit those juvenile adjudications that would qualify as 'strikes,' that such a result would seem to be at odds with the" Legislature's expressed intent. (Maj. opn., *ante*, at p. 1102.) They fail to persuade.

[2] In my view, a finding of fitness may be implied and need not be express. An express finding—contained in a declaration such as "the juvenile is in fact fit"—leaves nothing to be desired. An implied finding—inferable, for example, from a refusal to transfer the proceeding to criminal court after conclusion of a hearing on fitness—is sufficient.

[3] The majority construe section 667(d)(3)(C) away assertedly in order to avoid making (d)(3)(A) "redundant": at the time of the Three Strikes law, the juvenile court could make a finding of fitness only as to a juvenile who was at least 16 years old when he committed the offense resulting in the prior juvenile adjudication. (Maj. opn., *ante*, at p. 1102.) But at that time, as Justice Kennard explains in her dissenting opinion, it was about to be given the power to make such a finding as to a juvenile as young as 14 years old. (Dis. opn. of Kennard, J., *post*, at p. 1114.) Section 667(d)(3)(A) must therefore be considered anticipatory. It cannot be deemed "redundant."

At the threshold, the majority's argument comes close to passing on the wisdom of the requirement of a finding of fitness contained in section 667(d)(3)(C). That would be impermissible. But, contrary to the majority (maj. opn., *ante*, at p. 1102), we can surely conclude that it is not "irrational." For we may deem it a kind of screening device, separating classes of juveniles—those as to whom a doubt about fitness had been raised (albeit subsequently resolved), and those as to whom such a doubt had not.

On the merits, the majority's argument conjectures, and complains, that the requirement of a finding of fitness contained in section 667(d)(3)(C) might "severely limit" the substantive scope of possible strikes for prior juvenile adjudications against the Legislature's expressed intent. Its conjecture is without basis: it provides no numbers, hard or soft. Its complaint is similar: it ignores that the intent is "to ensure longer prison sentences and greater punishment" *for certain recidivists under certain conditions* (Pen. Code, § 667, subd. (b))—including those with at least one prior juvenile adjudication with a finding of fitness, and excluding those with such an adjudication but without such a finding. Moreover, a limitation, even a severe limitation, of the sort referred to might not be out of place. The substantive scope of possible strikes for prior juvenile adjudications is broader than that for prior felony convictions properly so called. The latter comprises "violent" and "serious" California felonies and certain out-of-state felonies. The former, by contrast, embraces those same felonies and also reaches beyond to Welfare and Institutions Code section 707(b) offenses, which cover such otherwise uncovered crimes as bribery of a witness (Welf. & Inst. Code, § 707, subd. (b)(19)). Consequently, some offenses committed by a juvenile are possible strikes, but the same ones committed by an adult are not. Such a result is harsh and hard to justify. A limitation like that referred to might have a mitigating effect.

The majority also attempt to justify their removal of the requirement of a finding of fitness contained in section 667(d)(3)(C) by arguing that the retention of such a requirement "would evoke questions regarding . . . constitutional validity." (Maj. opn., *ante*, at p. 1102.) Here too, they fail to persuade.

In one sense, the majority's argument is too early. Questions regarding the constitutional validity of the requirement of a finding of fitness contained in section 667(d)(3)(C) have not yet been squarely raised. Answers may therefore be left to another day. As stated, such a requirement is not irrational, functioning as it does as a kind of screening device, separating out those juveniles as to whom a doubt about fitness had been raised. If the juvenile himself was the source of the doubt, there is no ground for concern: He made

an admission. If the juvenile court was the source, the matter is not much different: It must be presumed to have acted on a factual basis. Even if the source was the prosecutor, the same is true: he must enjoy the same presumption. (Cf. *People* v. *Wheeler* (1978) 22 Cal.3d 258, 278 [148 Cal.Rptr. 890, 583 P.2d 748] [holding that "in any given instance the presumption must be that a [prosecutor] exercising a peremptory challenge is doing so on a constitutionally permissible ground"].)

In another sense, the majority's argument is too late. Here, the People have declared that the Three Strikes law in its entirety is "poorly drafted." Concerns like theirs should have been addressed to the Legislature, as it was considering whether to include a requirement of a finding of fitness. They are now out of time, the Legislature having already included such a require-ment in section 667(d)(3)(C).

## III

For the reasons stated above, I would reverse the Court of Appeal's judgment to the extent that it reverses the superior court's order striking the prior juvenile adjudication allegation as to assault.

Werdegar, J., concurred.

**KENNARD, J.,** Dissenting.—The "Three Strikes" law (Pen. Code, § 667, subds. (b)-(i))[1] provides that a juvenile adjudication is a "strike" only if, during the proceedings leading to the adjudication, the juvenile "was found to be a fit and proper subject to be dealt with under the juvenile court law." (§ 667, subd. (d)(3)(C).) Such a finding is made at a hearing under Welfare and Institutions Code section 707, when the juvenile court, in considering a request by the prosecutor that the juvenile be tried as an adult, determines that the juvenile is "a fit and proper subject to be dealt with under the juvenile court law." (Welf. & Inst. Code, § 707, subd. (c).) Thus, in my view, a juvenile adjudication is not a "strike" unless, during the proceedings leading to the adjudication, the court made a finding of "fitness" under section 707 of the Welfare and Institutions Code.

In this case, the prosecution alleged two prior juvenile adjudications as "strikes." Neither of these adjudications resulted from proceedings in which the prosecutor asked that the minor be tried as an adult; thus, in neither proceeding did the juvenile court find that the minor was "a fit and proper subject to be dealt with under the juvenile court law," as required by the Three Strikes law. Nevertheless, the majority holds that each adjudication is

---

[1] Unless otherwise stated, further statutory references are to the Penal Code.

a "strike." It reaches this result by ignoring the plain meaning of section 667, subdivision (d)(3)(C), as well as established rules of statutory construction.

## I

Defendant was charged with murder (§ 187) and attempted murder (§§ 187/664). Also alleged were three prior "strikes" under the Three Strikes law: an adult conviction for robbery (§ 211), and juvenile adjudications for residential burglary (§ 459) and felonious assault (§ 245). Defendant moved to have the juvenile adjudications stricken on a variety of grounds, one of which was that in neither juvenile adjudication did the trial court make a finding that defendant was "a fit and proper subject to be dealt with under the juvenile court law." (§ 667, subd. (d)(3)(C).) The prosecution conceded that no such finding of fitness appeared on the record of either case, but argued that such a finding is "inherent" in *every* juvenile case in which the juvenile court finds true the allegations of a delinquency petition, and the minor is either adjudged or continues to be a ward of the court. The trial court granted defendant's motion, ordering the adjudications stricken. The prosecution appealed. The Court of Appeal held that a juvenile adjudication may be a "strike" even if the juvenile court made no explicit finding that the minor was fit to be dealt with under juvenile court law. This court granted review.

## II

Under the Three Strikes law, three types of qualifying offenses may be considered as "strikes": (1) an adult conviction for a California crime listed in section 667.5, subdivision (c) as a violent felony, or listed in section 1192.7, subdivision (c) as a serious felony; (2) an adult conviction for a crime that was committed outside of California and includes all the elements of a crime listed under our state statutes as a violent or serious felony, and (3) certain prior juvenile adjudications. (§ 667, subd. (d).) The third category is at issue here.

Under section 667, subdivision (d)(3), a juvenile adjudication must satisfy four criteria to qualify as a strike: "A prior juvenile adjudication shall constitute a prior felony conviction for purposes of sentence enhancement if: [¶] (A) The juvenile was 16 years of age or older at the time he or she committed the prior offense. [¶] (B) The prior offense is listed in subdivision (b) of Section 707 of the Welfare and Institutions Code or described in paragraph (1) [California convictions for serious or violent felonies] or (2) [out-of-state convictions for serious or violent felonies] as a felony. [¶] (C) *The juvenile was found to be a fit and proper subject to be dealt with*

*under the juvenile court law.* [¶] (D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (Italics added.)

What did the Legislature mean when it required that, to qualify as a "strike," the adjudication be one in which "the juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law?" As I stated at the outset, such a finding is made only at a so-called "fitness" hearing under Welfare and Institutions Code section 707. Subdivision (c) of that statute authorizes the prosecutor in any juvenile delinquency matter to request a hearing to determine whether the minor is "a fit and proper subject to be dealt with under the juvenile court law."[2] If, at the hearing, the juvenile court makes a finding of unfitness, the pending charge is, as a general rule, transferred to adult court, and the minor is tried as an adult for the offense charged. (Welf. & Inst. Code, § 707.01.) If, on the other hand, the juvenile court finds the minor fit to be dealt with under juvenile court law, the charges are disposed of in juvenile court.

When the Legislature drafted the juvenile "strike" provision embodied in subdivision (d)(3)(C) of section 667, it used the identical words—"a fit and proper subject to be dealt with under the juvenile court law"—as in Welfare and Institutions Code section 707, describing the finding that the juvenile court must make at a fitness hearing. This creates a strong inference of the Legislature's intent, in subdivision (d)(3)(C), to have qualify as "strikes" only those juvenile adjudications arising from proceedings in which the juvenile court, after conducting a fitness hearing under Welfare and Institutions Code section 707, found the minor to be "a fit and proper subject to be dealt with under the juvenile court law." (§ 707, subd. (c).)

I find additional support for this conclusion in the Legislature's express reference to Welfare and Institutions Code section 707 in the "strike" provisions in Penal Code section 667 immediately before and after subdivision (d)(3)(C). Thus, subdivision (d)(3)(B) of section 667 provides that to qualify as a "strike," the juvenile adjudication must be one of the offenses "listed in subdivision (b) of Section 707 of the Welfare and Institutions Code," or it must be listed elsewhere as a violent or serious felony. Similarly, under subdivision (d)(3)(D) of Penal Code section 667, a juvenile

---

[2]Although decisional law has held that in rare instances a fitness hearing may be proposed by the court (*Green* v. *Municipal Court* (1976) 67 Cal.App.3d 794, 798-804 [136 Cal.Rptr. 710]) or requested by the minor (*Joey W.* v. *Superior Court* (1992) 7 Cal.App.4th 1167, 1174 [9 Cal.Rptr.2d 486]), Welfare and Institutions Code section 707 authorizes only the "petitioner" to do so. The petitioner in a delinquency matter is the prosecuting attorney. (Welf. & Inst. Code, § 650, subd. (c).)

adjudication is a "strike" only if the juvenile "was adjudged a ward of the juvenile court . . . [for committing] an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code."

Some 16-year-old delinquents are already dangerous, violent criminals. But there may be others whose acts reflect youthful immaturity rather than a commitment to crime. Perhaps it was a concern not to subject juvenile offenders in the latter category to the harsh penalties of the new Three Strikes law that led the Legislature, which had never before permitted juvenile adjudications to be used in adult court for purposes of enhancement, to include within the class of "strikes" only those crimes that, in the prosecutor's view, were so serious as to require trying the minor as an adult.

According to the majority, a juvenile adjudication is a "strike" regardless of whether the prosecutor had sought a fitness hearing under Welfare and Institutions Code section 707. In the majority's view, an "implied" finding that the minor is "a fit and proper subject to be dealt with under the juvenile court law" is inherent in *every* juvenile adjudication, and therefore *all* juvenile adjudications that meet the criteria listed in subparts (A), (B), and (D) of Penal Code section 667, subdivision (d)(3) are "strikes." Not only does the majority's holding fly in the face of the language of section 667, subdivision (d)(3)(C), which says nothing about "implied" findings, but it also renders that subdivision utterly meaningless. As I noted earlier, subdivision (d)(3) sets forth—in subparts (A), (B), (C), and (D)—four criteria that describe which juvenile adjudications can qualify as "strikes." If subdivision (d)(3)(C)'s criterion is satisfied in *every* juvenile adjudication, then the provision serves no purpose.

In construing subdivision (d)(3)(C) of section 667 as having no effect, the majority has disregarded a cardinal rule of statutory construction, that courts should avoid a construction that makes some words surplusage. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].) Here, the majority has not merely made surplusage out of a few words, but has construed an entire subdivision out of existence.

The majority insists that under its construction, section 667, subdivision (d)(3)(C)'s requirement that there be "a determination that the minor is a fit and proper subject to be dealt with under the juvenile court law" is not surplusage because it "helps distinguish those offenses committed by minors 16 or over that are adjudicated in juvenile court rather than as adult offenses." (Maj. opn., *ante*, at p. 1102.) The majority does not explain, however, how the requirement in question "helps" in making this distinction. In any event, as I shall show, the majority is simply wrong.

Section 667, subdivision (d)(3) begins by stating that a "prior *juvenile adjudication* shall constitute a prior felony conviction for purposes of enhancement" if it meets the four criteria I mentioned earlier. (Italics added.) Thus, subdivision (d)(3), in the words of the majority, "lists the requirements for a prior *juvenile adjudication* to qualify as a 'strike.' " (Maj. opn., *ante*, at p. 1100, italics added.) By definition, a juvenile adjudication can occur only in juvenile court. Therefore, contrary to the majority's bare assertion, subdivision (d)(3)(C) cannot possibly "help" in distinguishing between those offenses that are covered by subdivision (d)(3) and are adjudicated in juvenile court from those that are adjudicated as "adult offenses," for *none* of the offenses covered in subdivision (d)(3) are adjudicated as adult offenses.

The majority offers three justifications for its construction of section 667, subdivision (d)(3)(C). None is persuasive.

First, according to the majority, to require an express finding of fitness "would so severely limit those juvenile adjudications that would qualify as 'strikes,' that such a result would seem to be at odds with the *intent* of section 667, subdivisions (b)-(i)." (Maj. opn., *ante*, at p. 1102, italics added.) What intent? The majority offers no explanation.

Once again, the majority's assertion ignores a principle of statutory construction. Ordinarily, a reviewing court looks to the language of the statute to ascertain the Legislature's intent in enacting it. (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) When the statutory language is ambiguous, we may examine the goals to be achieved and the legislative history to assist us in resolving the ambiguity. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) Here, the language of section 667, subdivision (d)(3)(C) is unambiguous: Juvenile adjudications qualify as "strikes" only if there has been a determination that the minor is "a fit and proper subject to be dealt with under the juvenile court law." But even if this language were considered ambiguous, the majority does not mention anything in the legislative history of section 667 that would suggest that the conclusion I draw from the statutory language—that the trial court must find the minor a fit subject to be dealt with under juvenile court law at a hearing under Welfare and Institutions Code section 707—is not the correct one.

The only declaration of legislative intent pertaining to the entire Three Strikes statutory scheme appears in section 667, subdivision (b), which states: "It is the intent of the Legislature in enacting subdivisions (b) through

(i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously *convicted* of serious and/or violent felony offenses." (Italics added.) But this is of no help in construing subdivision (d)(3)(C) of section 667, for it refers only to persons previously "convicted" of violent or serious felonies. Ordinarily, juvenile adjudications are not convictions. While section 667, subdivision (d)(3) treats *some* juvenile adjudications as adult felony convictions and therefore as "strikes" for purposes of the Three Strikes law, in this case the issue is *which* adjudications the Legislature intended to treat in this fashion. As to this issue, the declaration of legislative intent in subdivision (b) of section 667 offers no assistance.

Next, the majority says a rule that only juvenile adjudications accompanied by a finding of fitness could qualify as "strikes," as I am proposing, "would evoke questions regarding the statute's constitutional validity," because an increase in punishment "would depend solely on an *unsuccessful* motion for a determination that the minor is unfit for treatment in the juvenile court system." (Maj. opn., *ante*, at p. 1102, original italics.) This statement is misleading. For an offense committed by a juvenile to be a strike, the prosecution need not make an *unsuccessful* motion to try the juvenile as an adult, because the offense will be a "strike" whether or not the motion succeeds. If the trial court grants the motion, the offense will be adjudicated in adult court, and if the minor is found guilty, the offense will qualify as a strike. If, however, the court denies the motion, the offense will be adjudicated in juvenile court, and if the minor is found to have committed the crime it will still qualify as a strike. In short, whether a criminal act by a juvenile is a "strike" does not turn on whether the prosecution is *successful* in its attempt to have the minor tried as an adult; rather, it turns on whether the prosecutor considers the crime so serious as to make the attempt in the first place.

The majority's perceived shortcoming of such a rule is that it "would arguably be open to a variety of constitutional challenges such as equal protection, due process, and separation of powers." (Maj. opn., *ante*, at p. 1102.) The majority cites no authority for this bare assertion. Moreover, because defendant has not attacked the constitutionality of the Three Strikes law, this issue is not present here. In any event, the majority's resort to the rule of construction that ambiguous statutes should be construed in a manner that will avoid doubts about their constitutionality is of no avail. For this rule to apply, "the statute must be *realistically* susceptible of two interpretations . . . ." (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1146 [240 Cal.Rptr. 585, 742 P.2d 1306], original italics.) Here, as I have shown, the statutory

language is unambiguous. Therefore, it may not *realistically* be construed to abrogate the requirement that the minor be found, at a fitness hearing under Welfare and Institutions Code section 707, to be "a fit and proper subject to be dealt with under the juvenile court law." (Welf. & Inst. Code, § 707, subd. (c).)

Finally the majority, apparently conceding that its construction of section 667, subdivision (d)(3)(C) renders this provision superfluous, asserts that to construe this provision as requiring an express finding of fitness by the juvenile court could "arguably" render superfluous subdivision (d)(3)(A) of section 667. Thus, according to the majority, either way section 667, subdivision (d)(3) is construed, part of it is superfluous.

Under subdivision (d)(3)(A) of section 667, juvenile adjudications qualify as "strikes" if the juvenile "was 16 years of age or older at the time he or she committed the prior offense." When the Legislature enacted the Three Strikes law, juveniles under the age of 16 could not be tried as adults. Therefore, the majority reasons, if the Legislature intended section 667, subdivision (d)(3)(C) to require an express finding of fitness, there was no need for it to enact subdivision (d)(3)(A), because minors over the age of 16 were the only ones who could be found unfit to be tried in juvenile court.

This argument has superficial appeal, but on careful examination it proves unpersuasive. True, when the Three Strikes law was enacted in March 1994, minors under the age of 16 could not be tried as adults. But that was changed six months later, when the Legislature amended Welfare and Institutions Code section 707 to permit minors as young as 14 to be tried as an adults. Assembly Bill No. 560, 1993-1994 Regular Session, which proposed amending section 707, was introduced in February 1993, and had been pending for over a year when the Legislature enacted the Three Strikes law in March 1994. Thus the Legislature knew, when it enacted the Three Strikes law, that it was on the verge of enacting legislation that would make Penal Code section 667, subdivision (d)(3)(A) *not* superfluous. It is reasonable to assume that the Legislature anticipated the passage of that legislation when it chose to include subdivision (d)(3)(A) in the Three Strikes law.

The majority's holding also violates the time-honored rule that "ambiguous penal statutes are construed to favor the defendant." (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 530 [53 Cal.Rptr.2d 789, 917 P.2d 628].) As this court said 107 years ago, "the defendant [in a criminal case] is entitled to the benefit of every reasonable doubt . . . as to the true interpretation of words or the construction of language used in a statute . . . ." (*Ex parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372].)

CONCLUSION

We are all concerned about the epidemic of violent crime in our society. The Three Strikes law that the Legislature enacted in March 1994 and that we construe today (§ 667, subds. (b)-(i)) reflects a toughening public attitude towards repeat offenders. That attitude is also reflected in the nearly identical Three Strikes initiative that was overwhelmingly passed by the voters just eight months later. (§ 1170.12.)

A court construing a statute, however, can never be guided by public sentiment alone. Here, in construing the Three Strikes law, it is not enough to say that because the Legislature and the electorate wished to impose tougher penalties on repeat violent offenders, we should therefore give that enactment the harshest possible construction. Judges are constrained by the law. For the sake of the predictability and stability of the law, our guideposts in interpreting the Three Strikes law must be the usual principles of statutory construction that apply in every case, not our projections of the hopes and fears that led to the statute's enactment. In the words of United States Supreme Court Justice Felix Frankfurter: "For judicial construction to stick close to what the legislation says and not draw prodigally upon unformulated purposes or directions makes for careful draftsmanship and for legislative responsibility. . . . Judicial expansion of meaning beyond the limits indicated is reprehensible because it encourages slipshodness in draftsmanship and irresponsibility in legislation. It also enlists too heavily the private . . . views of judges." (Frankfurter, *Foreword,* Symposium on Statutory Construction (1950) 3 Vand. L.Rev. 365, 367-368.)

As the Contra Costa District Attorney said in a superior court brief he filed in this case, " 'Three Strikes' is a poorly drafted statute." Many of its provisions are contradictory or lack clarity. But the provision we construe today, subdivision (d)(3)(C) of section 667, is among the clearer ones in the Three Strikes law. As I have explained, application of well-established rules of construction here compels the conclusion that under subdivision (d)(3)(C), a juvenile adjudication is a "strike" only if the juvenile court has made the finding that the minor is "a fit and proper subject to be treated under the juvenile court law." In coming to a contrary conclusion, the majority ignores these principles. The majority achieves its result of increasing the number of juvenile adjudications that will count as "strikes" only at the cost of effectively throwing out subdivision (d)(3)(C) from the Three Strikes law.

I would reverse the judgment of the Court of Appeal.

Werdegar, J., concurred.

Respondent's petition for a rehearing was denied August 27, 1997. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.