Filed 12/17/20  P. v. Esquivias CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B301989 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA088058- |
| v. | 01) |
| ADAN ESQUIVIAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stacy S. Schwartz, Deputy Attorneys General.

\* \* \* \* \* \*

A defendant convicted of robbing four businesses over a two-day crime spree argues that the trial court erred in (1) instructing the jury on the factors relevant to eyewitness testimony using the standard CALCRIM instruction, and (2) dismissing only one of his two prior "strike" allegations under our Three Strikes Law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).[1]  These arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL HISTORY

### I.    Facts

#### A.    *Robbery of Recycling Innovations*

On March 15, 2018, defendant walked into a recycling business called Recycling Innovations at lunchtime, put a gun in the back of the on-duty cashier, and demanded money from the cash register.  The cashier gave him $75 or $80.  The cashier picked defendant out of a photospread and identified him in court.

The entire robbery was caught on surveillance video, and the cashier identified defendant on the video.

#### B.    *Robbery of Metro PCS store*

Less than two hours after robbing the cashier at Recycling Innovations, defendant walked into a Metro PCS store on Reseda Boulevard, placed his gun on the cashier's counter, moved the gun back and forth on the counter so as to point it at one of the two on-duty cashiers, and demanded that they empty their cash registers.  The cashiers gave defendant between $100 and $200.  One of the cashiers identified defendant out of a photospread, and both cashiers identified defendant in court.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

The entire robbery was also caught on surveillance video from multiple angles; both cashiers identified defendant on the video and from still photographs of defendant's face made from the video.

### C.    *Robbery of second Metro PCS store*

The next day, at around 5:00 p.m., defendant walked into a Metro PCS store on White Oak Boulevard, pulled out a gun and placed it on the cashier's counter with his hand atop it, pointed it at the cashier, and told the cashier to "[j]ust give [him] the cash." The cashier gave defendant approximately $180. The cashier identified defendant in court.

The entire robbery was also caught on surveillance video from multiple angles, and the cashier was able to identify defendant's face from one of the videos.

### D.    *Robbery of third Metro PCS store*

A half-hour after robbing the second Metro PCS store, defendant walked into a Metro PCS store on Reseda Boulevard, pointed a gun at the cashier, and demanded cash.  The cashier gave defendant a little over $100.  The clerk identified defendant from a photospread and in court.

The entire robbery was also caught on surveillance video, and the cashier was able to identify defendant's face from photographs he took of the video footage.

### E.    *Defendant's arrest*

The following day, defendant was arrested at his apartment.  Clothing matching that worn by the robber of the four businesses, and a gun identical in appearance to the gun used in the robberies, were found in the apartment.

## II.    Procedural Background

The People charged defendant with five counts of second degree robbery (§ 211), one for each cashier-victim.  As to each robbery, the People further alleged that defendant was armed with a firearm (§ 12022, subd. (a)(1)), as well as that he personally used a firearm (§ 12022.53, subd. (b)).  The People also alleged that defendant's 1995 convictions for second degree robbery (§ 211) and assault with a deadly weapon (§ 245, subd. (a)) constituted "strikes" within the meaning of our Three Strikes Law, and that his 1995 robbery conviction also constituted a prior serious felony (§§ 667, subds. (a), (b)-(j), 1170.12).

After a jury convicted defendant of all charged crimes, found the personal use of a firearm allegation to be true as to each crime,[2] and after defendant admitted his prior "strike" convictions, the trial court sentenced defendant to prison for 42 years and 4 months.  More specifically, the court imposed a principal sentence of 16 years on one robbery count (comprised of a base sentence of 6 years, calculated as 3 years doubled due to the prior strike, plus 10 years for the firearm enhancement), followed by four consecutive sentences of 5 years and 4 months for the remaining four robbery counts (comprised of a base sentence of 2 years, calculated as one-third of the midterm sentence of 3 years doubled due to the prior strike, plus 3 years and 4 months for the firearm enhancement, calculated as one-third of the 10-year firearm enhancement), followed by 5 years for the prior serious felony.  In calculating this sentence, the trial court partially granted defendant's motion to strike both of the

---

[2]    The People did not present the "armed with a firearm" enhancement to the jury.

4

People's "strike" allegations by dismissing his assault with a deadly weapon "strike" but *not* dismissing the robbery "strike."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in (1) instructing the jury using CALCRIM 315, and (2) not striking *both* of his prior strike convictions.

## I.  Instructional Error

CALCRIM 315 is the standard jury instruction setting forth 13 mandatory and three optional "questions" jurors are to "consider" "[i]n evaluating identification testimony"; one of those questions is, "How certain was the witness when he or she made an identification?"  (CALCRIM No. 315.)  Defendant argues that the trial court's recitation of the "certainty" factor renders all of his convictions invalid because empirical evidence has disproved any link between the *accuracy* of an eyewitness identification and the *certainty* with which the eyewitness makes it.  Our review of jury instructions is de novo.  (*People v. Campbell* (2020) 51 Cal.App.5th 463, 493.)

This argument entitles defendant to no relief in this case for two reasons.  First, our Supreme Court has repeatedly upheld the certainty factor in CALCRIM 315 or its predecessor instruction against precisely the criticism defendant levels here. (*People v. Sanchez* (2016) 63 Cal.4th 411, 461-462; *People v. Johnson* (1992) 3 Cal.4th 1183, 1231-1232; *People v. Ward* (2005) 36 Cal.4th 186, 213-214.)  Although our Supreme Court granted review in *People v. Lemcke* (June 21, 2018, G054241) [nonpub. opn.], review granted Oct. 10, 2018, S250108, to reconsider its prior precedent, *Lemcke* has not been decided and the prior

5

precedent still binds us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456-457.)

Second, the trial court's recitation of the certainty factor was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 835-836 and *Chapman v. Cal.* (1967) 386 U.S. 18. Only one of the five eyewitnesses alluded to the certainty of her identification by saying she had "no doubt" defendant was depicted on the surveillance video of the robbery; the other four did not mention the certainty of their identifications at all. What is more, the evidence that defendant was the perpetrator of all four robberies was overwhelming: Defendant's face was captured on the surveillance videos of all four robberies; the clothing defendant wore on the two separate days of robberies was found in defendant's apartment along with a gun identical in appearance to the one used in the robberies; and all five eyewitnesses provided interlocking descriptions of defendant's distinctive facial tattoos.

## II. Sentencing Error

A trial court has the discretion to dismiss a "strike" allegation. (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 162.) In deciding whether to exercise this discretion, the court is to "'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) There is a "strong presumption" against granting a motion to strike.

6

(*Id*. at p. 378.) We evaluate a trial court's decision not to grant a motion to strike for an abuse of discretion. (*Id*. at pp. 373-374.)

The trial court did not abuse its discretion in partially granting and partially denying defendant's motion to dismiss *both* of his prior "strike" convictions, by dismissing one and not dismissing the other. The court explained its view that it was appropriate to dismiss one—but not both—prior "strike" allegation because they were both 25 years old, because they both "[came] from the same case" and because defendant's interim convictions in 2004 and 2008 were for drug crimes and thus, did not involve "violence." These are appropriate considerations. What is more, this justification explains why the trial court nevertheless declined to dismiss the prior robbery "strike"— namely, because the similarity between the prior robbery strike and the five pending robbery charges demonstrated defendant's recidivism and because the court's concern about not doubly punishing defendant for two older "strikes" suffered at the same time did not justify the dismissal of *both* "strikes." Because imposing additional punishment for recidivists is squarely in the heartland of the Three Strikes Law (*People v. Davis* (1997) 15 Cal.4th 1096, 1099), the court acted well within its discretion in letting defendant's prior robbery "strike" stand.

Defendant urges that the trial court nevertheless abused its discretion in not dismissing *both* "strikes" because *both* strikes were old, because the dismissal of one warranted the dismissal of the other given that they were charged in the same case, and that the sentence he would receive if both strikes were dismissed would still be substantial. None of these additional considerations renders the trial court's ruling abusive. Where, as here, a defendant has committed a string of crimes throughout

7

his life, the age of a conviction matters less (*People v. Daniels* (2009) 176 Cal.App.4th 304, 317); in any event, the age of a "strike" conviction does not *mandate* its dismissal. Similarly, dismissing one "strike" does not *mandate* dismissing another; this remains true even where, as here, the dismissed "strike" was charged in the same case as the other. (E.g., *People v. Garcia* (1999) 20 Cal.4th 490, 502.) And although the still-substantial length of the sentence that would be imposed if a "strike" allegation were dismissed is a relevant factor (*id.* at pp. 502-503), it is not dispositive; courts may assess whether the longer sentence that would result if the "strike" allegation were *not* dismissed is warranted in light of the defendant's good prospects for committing future crimes. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315.) Here, defendant's recent spat of robberies seems to signal a renaissance in his penchant for the commission of violent crimes that the trial court could reasonably view as warranting a longer sentence. At bottom, defendant is inviting us to weigh the pertinent considerations differently than the trial court. This is an invitation we must decline. (E.g., *People v. Myers* (1999) 69 Cal.App.4th 305, 309 ["'[W]e do not reweigh the circumstances of the case to determine whether, in our opinion, the trial court should have . . . exercis[ed] its discretion to strike a prior conviction'"].)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ