[No. F029570. Fifth Dist. Mar. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KOY LENG, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Victor S. Haltom, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HARRIS, J.—**

### INTRODUCTION

Penal Code section 667, subdivision (d)(3) provides that a prior juvenile adjudication may constitute a strike if the offense is contained within Welfare and Institutions Code section 707, subdivision (b), or defined as a

serious or violent felony by Penal Code section 667.5 or 1192.7.[1] In this case, appellant Koy Leng's prior juvenile adjudication was not proved to be either a serious or violent felony offense, but it was an offense enumerated in Welfare and Institutions Code section 707, subdivision (b). Appellant asserts the use of a nonserious, nonviolent juvenile adjudication to impose a second strike sentence is contrary to the intent of the three strikes law and violates his right to equal protection of the laws. We agree and will reverse and remand the matter for further proceedings.

## STATEMENT OF THE CASE

On July 2, 1997, an information was filed in Fresno County Superior Court charging appellant Koy Leng with five felony offenses. Counts I and II each alleged a violation of section 246 (discharging a firearm at an inhabited dwelling place and discharging a firearm at an occupied vehicle, respectively); counts III and IV each alleged a violation of section 245, subdivision (b) (assault with a semiautomatic firearm); and count V alleged a violation of section 246.3 (discharge of a firearm in a grossly negligent manner). Counts III and IV alleged appellant personally used a firearm within the meaning of section 12022.5, subdivision (a).

On July 7, 1997, appellant entered a not guilty plea.

On September 2, 1997, appellant was arraigned on a first amended information.[2] It contained the same five felony counts and enhancements as the original information. The first amended information further alleged that "on or about February 29, 1992," appellant had suffered a juvenile adjudication for violation of section 245, subdivision (a)(1), a serious felony conviction within the meaning of section 667, subdivisions (b)-(i) and section 1170.12, subdivisions (a) through (e).[3] Appellant pleaded not guilty. The court granted appellant's motion to bifurcate trial on the prior felony conviction allegation. Jury trial commenced. On September 5, 1997, counts

[1] Unless otherwise stated, all statutory references are to the Penal Code.

[2] The amended information was signed by Fresno County Deputy District Attorney Timothy Donovan on August 8, 1997. It was lodged with the court on September 2, 1997, and filed on September 8, 1997.

[3] The three strikes law was enacted as emergency legislation on March 7, 1994 (§ 667, subds. (b)-(i)); the initiative version (§ 1170.12) was approved by the voters on November 9, 1994. Although the instant case involves offenses which occurred after the effective date of the initiative version, appellant was charged under both versions of the three strikes law. The relevant portions of the two versions are virtually identical. (*People* v. *Deloza* (1998) 18 Cal.4th 585, 588, fn. 3 [76 Cal.Rptr.2d 255, 957 P.2d 945]; *People* v. *Dotson* (1997) 16 Cal.4th 547, 551, fn. 2 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People* v. *Hazelton* (1996) 14 Cal.4th 101, 107 [58 Cal.Rptr.2d 443, 926 P.2d 423].) Our discussion of the three strikes law will refer to the legislative version to maintain consistency with the trial court's findings and

III and IV were amended by interlineation to allege Ricky Du and Andell Vongsynha as being the victims in those counts, respectively.

On September 5, 1997, the jury returned guilty verdicts on counts I, III and V and found the section 12022.5, subdivision (a) enhancement to be true as to count III; not guilty verdicts were returned on counts II and IV. Appellant waived jury trial on the prior conviction allegation. After receiving evidence and hearing argument, the court found the prior conviction allegation to be true, the court specifically finding that the juvenile violation of section 245, subdivision (a)(1) occurred on February 29, 1992, the adjudication thereof occurred on March 25, 1992, and that at both times appellant was over the age of 16 and found a fit and proper subject to be dealt with in juvenile court.

Sentencing was held on October 31, 1997. The court declined to exercise its discretion to strike the prior conviction allegation. Count III was selected as the principal term. Appellant was thereafter sentenced to a total term of 22 years imprisonment, calculated as follows: on count III, the middle term of 6 years, doubled, plus the aggravated 10-year term for the section 12022.5, subdivision (a) enhancement. The court imposed a concurrent term of 10 years for count I. A concurrent four-year term on count V was stayed pursuant to section 654.

Timely notice of appeal was filed on November 4, 1997.

FACTS

On the evening of January 10, 1997, Phoungeun (Vicky) Sisavaddy[4] allowed her 16-year-old sister, Elizabeth, to have a party at her residence which was located at 8896 North Archie in Fresno. Around midnight, Vicky and her roommates ended the party because some underage guests were drinking alcohol. Instead of leaving, the guests congregated in front of the house. Vicky went outside with her friend, Frank Aleman. Aleman discovered his car had been vandalized; he became upset, went into the house, came back out with a gun and demanded the people leave. Aleman then went back into the house. Subsequently, while standing in the driveway, Vicky saw appellant walk toward her house from the other side of the street. He was staring at Frank Aleman, who was then standing in the house. Appellant was holding something black behind his back. Vicky told appellant to leave

---

the parties' arguments. However, our conclusions are equally applicable to the initiative version of the law, although necessarily limited to second strike cases.

[4]The probation report and the parties on appeal refer to the surname "Fisavaddy." The reporter's transcript reflects that at trial the witness spelled her name "S-i-s-a-v-a-d-d-y."

and tried to push him back off the driveway. It was then that she realized appellant was holding a gun. Four males came over and pulled appellant toward a car. When appellant was approximately 25 feet away from Vicky, he fired multiple shots straight toward the house where Frank was standing. One bullet grazed Elizabeth's face; another, or a fragment, bruised Ricky Du's buttocks, and a third grazed one of Jerry Yang's fingers. The house itself was also hit. Appellant and the four males got in the car and left.

Later that evening, some shots were fired from a car at an older BMW vehicle in which some party guests were riding.

Appellant was arrested on January 14, 1997. A nine-millimeter semiautomatic handgun was found in the trunk of his car. Rounds fired from this gun matched shell casings found at the North Archie residence after the shooting.

In an interview after his arrest appellant admitted firing the gun at the party approximately 10 times. However, he claimed that he had held the gun above his head and fired into the air. He knew there were people inside the residence and scattered over the yard area. He was not concerned about this because "he was aiming high and that he wasn't going to hit anybody." He denied shooting at the BMW and disclaimed any knowledge as to who was involved in that incident.

DISCUSSION

I.

*Juvenile Adjudications Must Be for Serious or Violent Offenses to Constitute Strikes*

Appellant was subjected to a second strike sentence based on the trial court's finding that his prior juvenile adjudication for assault constituted a strike within the meaning of the three strikes law. Appellant challenges the evidence regarding the nature of this prior offense, but also raises constitutional issues regarding the application of the three strikes law to this type of juvenile adjudication. We are thus presented with an issue of first impression: whether a juvenile adjudication for a nonserious, nonviolent felony offense may constitute a strike within the meaning of the three strikes law.

A. *Factual background*

The amended information alleged appellant suffered a prior juvenile adjudication based on a violation of section 245, subdivision (a)(1), and that

such an adjudication constituted a strike within the meaning of the three strikes law. Properly admitted evidence shows that on March 25, 1992, appellant, then 17 years old, entered a negotiated plea in the juvenile court whereby he admitted violating section 245, subdivision (a)(1), assault with a deadly weapon other than a firearm or by means of force likely to produce great bodily injury. He did not admit personally using a weapon or inflicting great bodily injury.

At the bifurcated hearing on the strike allegation, appellant asserted the juvenile adjudication could not be treated as a strike because it was not a serious or violent felony within the meaning of the three strikes law, and such a finding would violate his right to equal protection. The prosecution asserted the juvenile adjudication for assault was within the meaning of Welfare and Institutions Code section 707, subdivision (b), and thus constituted a strike pursuant to the express terms of section 667, subdivision (d)(3).

The trial court acknowledged appellant's equal protection argument but found that the Legislature could validly distinguish between the offenses and penalties imposed against juvenile and adult offenders. The court found appellant's prior juvenile adjudication constituted a strike, and imposed the appropriate second strike term. The trial court reasoned that section 667, subdivision (d)(3) states that juvenile offenses listed in subdivision (b) of section 707 of the Welfare and Institutions Code shall constitute strikes. Welfare and Institutions Code section 707, subdivision (b)(14) lists "[a]ssault by any means of force likely to produce great bodily injury." Accordingly, the court found the prior juvenile adjudication was a strike prior.

Against this background, appellant asserts the prosecution failed to prove his prior juvenile adjudication for assault constituted a serious or violent felony within the meaning of the three strikes law. Appellant reasserts his equal protection challenge and argues that a prior juvenile adjudication must be for a serious or violent offense in order to constitute a strike.

B. *Failure to prove the prior juvenile adjudication was for a serious or violent felony offense*

Appellant contends the prosecution failed to prove his prior juvenile adjudication for assault constituted a serious or violent felony within the meaning of the three strikes law. Respondent asserts the trial court impliedly found the prior juvenile adjudication constituted a serious felony, and admitted various documents from the juvenile record which establish the requisite proof that the offense was a serious felony.

A violation of section 245, subdivision (a)(1) is a serious felony only if the prosecution properly pleads and proves that the defendant "personally inflict[ed] great bodily injury on any person, other than an accomplice, or . . . personally use[d] a firearm" (§ 1192.7, subd. (c)(8)), or "personally used a dangerous or deadly weapon" (§ 1192.7, subd. (c)(23)). (*People* v. *Rodriguez* (1998) 17 Cal.4th 253, 261 [70 Cal.Rptr.2d 334, 949 P.2d 31]; *People* v. *Williams* (1990) 222 Cal.App.3d 911, 914-915 [272 Cal.Rptr. 212].) "One may thus violate section 245(a)(1) in two ways that would not qualify as 'serious' felonies under section 1192.7, subdivision (c): First, one may aid and abet the assault without *personally* inflicting great bodily harm or using a firearm. Second, one may commit the assault with force 'likely' to cause great bodily injury without, however, *actually* causing great bodily injury or using a deadly weapon. Accordingly, the least adjudicated elements of the crime defined in section 245(a)(1) are insufficient to establish a 'serious' felony. [Citations.]" (*People* v. *Rodriguez, supra,* 17 Cal.4th at p. 261.) However, the prosecution is entitled to go beyond the least adjudicated elements of the prior conviction and use the entire record to prove that the defendant had in fact personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)) or personally used a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)). (*People* v. *Rodriguez, supra,* 17 Cal.4th at pp. 261-262; *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355-356 [243 Cal.Rptr. 688, 748 P.2d 1150].)

The trial court herein did not explicitly or implicitly find that appellant's prior juvenile adjudication constituted a serious felony within the meaning of section 1192.7, subdivision (c)(8) or (23). The trial court noted that "Penal Code Section 245 (A) (1) is not listed in 1192.7(c) as a serious felony," and "there is a discrepancy between that which apparently applies to adults as opposed to those that apply to juveniles" and "there may appear to be due process or fundamental fairness issues here." In addition, the prosecution did not plead or prove that appellant personally used a deadly weapon or personally inflicted great bodily injury during the juvenile assault. The prosecution sought to introduce various documents from the juvenile record, and argued such documents were relevant to prove appellant indeed suffered the juvenile adjudication. However, the trial court only admitted the juvenile petition and prior orders reflecting the simple fact of the juvenile adjudication for assault. The court declined to admit that portion of the documents on which respondent presently relies in asserting the underlying adjudication was a serious felony.[5] Accordingly, we reject respondent's argument that the trial court impliedly found the prior juvenile

---

[5]Neither the court nor the parties considered whether the documents from the juvenile record were admissible to establish the serious or violent nature of the underlying adjudication, and we need not reach that issue for purposes of our discussion.

adjudication constituted a strike because it was a serious felony within the meaning of section 1192.7, or that sufficient evidence exists in the record herein to establish that fact.

### C. *A nonserious, nonviolent juvenile adjudication cannot be a strike*

Having resolved the introductory points, we now turn to the heart of the issue: may prior juvenile adjudications for offenses which are neither serious nor violent felonies within the meaning of section 667.5 or 1192.7, but which are listed in Welfare and Institutions Code section 707, subdivision (b), constitute strike priors within the meaning of section 667, subdivision (d)(3)? We answer this question in the negative.

In resolving this question, we must consider section 667, subdivision (d)(3) of the three strikes law in the context of the Legislature's intent and the entire statutory framework in which it appears. Section 667, subdivision (b) states: "It is the intent of the Legislature in enacting subdivisions (b) to (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." Subdivision (d)(1) provides, in relevant part, that "[a]ny offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state" is a strike prior. Subdivision (d)(2) provides that a conviction in another jurisdiction is a strike prior if it includes all the elements of the particular felony as defined in sections 667.5, subdivision (c) and section 1192.7, subdivision (c).

Section 667, subdivision (d)(3) provides that a prior juvenile adjudication shall constitute a prior felony conviction for purposes of the three strikes law if four criterion are met: (A) the juvenile was 16 years of age or older at the time he or she committed the prior offense; (B) the prior offense is listed in subdivision (b) of section 707 of the Welfare and Institutions Code or described in paragraph (1) or (2) of subdivision (d) of section 667 as a felony; (C) the juvenile was found to be fit to be dealt with in the juvenile court; and (D) the juvenile was adjudged a ward of the juvenile court because he or she committed an offense listed in subdivision (b) of section 707 of the Welfare and Institutions Code. Thus, section 667, subdivision (d)(3) provides that a prior juvenile adjudication may constitute a strike if it is delineated within Welfare and Institutions Code section 707, subdivision (b), or defined as a serious or violent felony by section 667.5 or 1192.7.

We have already determined the prosecution failed to introduce evidence to establish appellant's prior juvenile adjudication constituted a serious

felony pursuant to section 1192.7, subdivision (c). Respondent asserts appellant's juvenile adjudication for assault still constitutes a strike because it is delineated in Welfare and Institutions Code section 707, subdivision (b), regardless of its status as a serious or violent felony.

However, such a broad and literal construction of section 667, subdivision (d)(3) would infringe upon a defendant's right to equal protection of the laws as protected by the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution. ■ The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion. (*In re Demergian* (1989) 48 Cal.3d 284, 291-292 [256 Cal.Rptr. 392, 768 P.2d 1069]; *Kenneally* v. *Medical Board* (1994) 27 Cal.App.4th 489, 495 [32 Cal.Rptr.2d 504].) ■ "The constitutional guaranty of equal protection of the laws has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. [Citations.]" (*People* v. *Romo* (1975) 14 Cal.3d 189, 196 [121 Cal.Rptr. 111, 534 P.2d 1015].) The concept recognizes that persons similarly situated not be treated differently unless the disparity is justified. (*In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549]; *People* v. *Nguyen* (1997) 54 Cal.App.4th 705, 714 [63 Cal.Rptr.2d 173]; *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 914 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

■ In considering an equal protection challenge, we must first determine the appropriate standard of review, which depends upon the classification involved in, and the interests affected by, the challenged law. (*Bowens* v. *Superior Court* (1991) 1 Cal.4th 36, 42 [2 Cal.Rptr.2d 376, 820 P.2d 600]; *Kenneally* v. *Medical Board, supra,* 27 Cal.App.4th 489, 495.) Personal liberty is a fundamental right, and a classification infringing on such a right is subject to strict judicial scrutiny. (*People* v. *Olivas* (1976) 17 Cal.3d 236, 250-251 [131 Cal.Rptr. 55, 551 P.2d 375]; *Board of Supervisors* v. *Local Agency Formation Com., supra,* 3 Cal.4th at p. 913; *People* v. *Nguyen, supra,* 54 Cal.App.4th at pp. 715-716.) Under this very severe standard, a discriminatory law will not be given effect unless the state establishes the classification bears a close relation to the promotion of a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means possible. (*Board of Supervisors* v. *Local Agency Formation Com., supra,* 3 Cal.4th at p. 913; *People* v. *Nguyen, supra,* 54 Cal.App.4th at p. 716.) All other legislation satisfies the requirements of equal protection if it bears a rational relationship to a legitimate state interest. (*People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1046-1047 [53 Cal.Rptr.2d 156].)

Appellant received a second strike sentence based on the trial court's finding that his prior juvenile adjudication for assault was within Welfare and Institutions Code section 707, subdivision (b), and thus constituted a strike pursuant to section 667, subdivision (d)(3). However, the prosecution failed to introduce any evidence to establish the serious or violent nature of the underlying adjudication. Under the same set of circumstances, the court would not have been able to impose the same second strike sentence on an individual who had suffered a prior conviction for assault as an adult, unless the prosecution had proved the serious or violent nature of the prior offense. Thus, section 667, subdivision (d)(3) treats the personal liberty of similarly situated parties in a disparate manner.

The classifications created by the three strikes law for recidivist offenders have survived equal protection challenges based on the state's strong and compelling interest in protecting its citizens from the harm associated with serious or violent criminal conduct. (*People* v. *Nguyen, supra*, 54 Cal.App.4th at pp. 718-719; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 828-830 [51 Cal.Rptr.2d 106].) "The law we are reviewing classifies persons who have committed a serious or violent felony in the past separately from other recidivists, singling them out for greater punishment. There is no doubt but that a legislative body (or the people acting collectively in that capacity through the initiative process) may enact such a law." (*People* v. *Kilborn* (1996) 41 Cal.App.4th 1325, 1331 [49 Cal.Rptr.2d 152].) "[A] recidivist with two prior serious felony convictions is not comparable to a recidivist with prior nonserious felony convictions . . . . Violent and serious felony offenses differ from other offenses in many ways, including the reasons and motives of the criminal, the outrage and harm to the victim, and the potential for danger to the victim and society in general. Such differences warrant different treatment." (*People* v. *Cooper, supra*, 43 Cal.App.4th at p. 829.) ██ "The three strikes law is the Legislature's attempt to address the threat to society posed by the class of persons previously convicted of serious or violent felonies. There is no invidious classification or equal protection violation involved in that lawmaking." (*Ibid.*)

██ Section 667, subdivision (d)(3) runs afoul of this compelling state interest by including nonserious, nonviolent juvenile adjudications as strikes. Such a classification is not necessary or narrowly drawn to achieve the express purpose of the three strikes law of ensuring "longer prison sentences and greater punishment for those who commit a felony and *have been previously convicted of serious and/or violent felony offenses.*" (§ 667, subd. (b), italics added.) If all of the offenses listed in Welfare and Institutions Code section 707, subdivision (b) were to be considered as strikes, it would expand the list of qualifying strike offenses beyond serious or violent

felonies. An adult offender, who, as a juvenile, committed a crime listed in Welfare and Institutions Code section 707, subdivision (b) but not defined as a serious or violent felony pursuant to section 667.5 or 1192.7, would be treated more harshly than an adult offender who had committed the same prior offense as an adult. For example, dissuading a witness and inducing false testimony would be strike offenses if committed while the accused was a juvenile. Yet, those same crimes would not be strike priors if committed after the accused reached his or her majority. (Welf. & Inst. Code, § 707, subd. (b)(19).) We can discern no compelling state interest, or even a legitimate basis, for punishing people more harshly under the three strikes law simply because they committed one of these offenses while still subject to the juvenile law.

While the trial court acknowledged this disparity in the three strikes law, it rejected appellant's equal protection argument because the Legislature may validly distinguish between the offenses and penalties imposed against juvenile and adult offenders. (See *In re Eric J., supra*, 25 Cal.3d at p. 530.) The trial court's finding was predicated on the well-recognized principle that "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J., supra*, 25 Cal.3d at p. 530.) Our review of section 667, subdivision (d)(3), however, is not concerned with a comparison of the offenses and penalties imposed against juvenile and adult offenders, but with the disparate treatment of adult offenders alleged to be within the ambit of the three strikes law. In such a case, the adult offenders are similarly situated but subject to unequal treatment because of the nature of the underlying strike offense. Such an interpretation of section 667, subdivision (d)(3) is clearly violative of a defendant's right to equal protection of the laws.[6]

█ A statute must be interpreted in a manner which, whenever possible, preserves its constitutionality. (*Chahine* v. *State Bd. of Equalization* (1990) 222 Cal.App.3d 485, 490 [272 Cal.Rptr. 56].) Reviewing courts have the authority to reform a statute to protect against invalidation under the Constitution when it can be determined with confidence that it is possible to reform the statute in a manner which closely effectuates policy judgments clearly articulated by the enacting body and the enacting body would have preferred the reformed construction to invalidation of the statute. (*Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660-661, 670 [47 Cal.Rptr.2d 108, 905 P.2d 1248].) "[C]ourts may legitimately employ the power to reform in order to effectuate policy judgments clearly articulated

---

[6]Indeed, respondent has acknowledged the equal protection problems inherent in its proposed interpretation of section 667, subdivision (d)(3).

by the Legislature or electorate, when invalidating a statute would be far more destructive of the electorate's will." (*Id.* at p. 661.)

■ The well-recognized purpose of the three strikes law is to provide increased punishment for current offenders who have previously committed violent or serious crimes and have therefore not been rehabilitated or deterred from further criminal activity as a result of their prior imprisonment. (*People* v. *Davis* (1997) 15 Cal.4th 1096, 1099 [64 Cal.Rptr.2d 879, 938 P.2d 938].) ■ It thus becomes clear ·that the reference in section 667, subdivision (d)(3) to crimes listed in Welfare and Institutions Code section 707, subdivision (b) implicitly includes a requirement that such crimes must also be serious or violent felonies within the meaning of section 667.5 or 1192.7 in order to be strike offenses. A broad and literal interpretation of section 667, subdivision (d)(3) such that every crime listed in Welfare and Institutions Code section 707, subdivision (b) is a strike offense would be contrary to the legislative intent. It would have made no sense for the Legislature to specifically state earlier in the statute that it was its intent to ensure longer prison sentences for recidivists *who have previously committed serious or violent offenses* and then draft a section which punishes individuals who are not within this class of recidivists. Such an interpretation would also violate the basic principle of statutory construction directing appellate courts to interpret a statute in a manner which, whenever possible, preserves its constitutionality. (*Chahine* v. *State Bd. of Equalization, supra,* 222 Cal.App.3d at p. 490.)

Our construction of section 667, subdivision (d)(3) to preserve its constitutionality is also in accord with *People* v. *Griggs* (1997) 59 Cal.App.4th 557 [69 Cal.Rptr.2d 174]. There, we held that the failure of subdivision (d)(3)(D) to specifically state that those offenses described in paragraph (1) or (2) of subdivision (d) are strike offenses even if the offenses are not listed in Welfare and Institutions Code section 707, subdivision (b) was simply a drafting oversight. Thus, crimes which are not listed in Welfare and Institutions Code section 707, subdivision (b), but which are serious or violent felonies, e.g., voluntary manslaughter, rape which is not accomplished by force or violence or great bodily harm, kidnapping a child under the age of 14, and residential burglary, are strike offenses regardless whether the prior was proved in a juvenile or an adult proceeding. As we explained, ". . . it makes no sense—and would frustrate the express intent of the three strikes law (see § 667, subd. (b))—to allow the use of juvenile adjudications as 'strikes' but to permit only adults to incur a 'strike' as the result of an offense listed in section 667.5, subdivision (c), or section 1192.7, subdivision (c)." (*People* v. *Griggs, supra,* 59 Cal.App.4th at p. 561.) We now hold the converse to be equally true. It also makes no sense and frustrates the

express intent of the three strikes law to treat prior juvenile adjudications for nonviolent, nonserious crimes as strikes when adult convictions for the same offenses do not trigger application of the statute.

We therefore hold that a juvenile adjudication for an offense contained within Welfare and Institutions Code section 707, subdivision (b) may only constitute a strike if it is a serious or violent offense as defined in section 667.5 or 1192.7. The People failed to prove that appellant's prior juvenile adjudication constituted a serious or violent offense within the meaning of the three strikes law. Accordingly, the trial court's true finding on this allegation must be reversed.

However, the state and federal double jeopardy protections do not bar retrial of the prior strike allegation. (*People* v. *Monge* (1997) 16 Cal.4th 826, 845 [66 Cal.Rptr.2d 853, 941 P.2d 1121].) Hence, the appropriate remedy is to remand the matter for determination of whether appellant's prior juvenile adjudication for assault pursuant to section 245, subdivision (a)(1) was a serious or violent felony. As discussed above, the prosecution never introduced evidence concerning the nature of appellant's juvenile adjudication. Thus, the prosecution would have to present additional evidence at the retrial of the prior strike allegation in order for the trial court to reimpose the second strike term. We need not reach the potential evidentiary limitations which might apply to this additional evidence. (*People* v. *Monge, supra*, 16 Cal.4th at p. 845; *People* v. *Reed* (1996) 13 Cal.4th 217 [52 Cal.Rptr.2d 106, 914 P.2d 184]; *People* v. *Guerrero, supra*, 44 Cal.3d 343.) In addition, we need not reach appellant's other contention of error relating to the three strikes law.

## II.*

*Valid Factors Were Articulated in Support of the Aggravated Term for the Section 12022.5 Enhancement*

### DISPOSITION

The judgment of conviction in counts I, III and V and the true finding on the Penal Code section 12022.5, subdivision (a) enhancement are each affirmed. The true finding on the prior conviction allegation is reversed. The

*See footnote, *ante*, page 1.

sentence imposed is vacated, and the matter is remanded to the trial court for further appropriate proceedings, including resentencing.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

A petition for a rehearing was denied April 28, 1999, and the opinion was modified to read as printed above.