Filed 3/4/15  P. v. Sanchez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C073130 |
| Plaintiff and Respondent, | (Super. Ct. No. P12CRF0500) |
| v. | |
| JESUS LOPEZ SANCHEZ, | |
| Defendant and Appellant. | |

A jury found defendant Jesus Lopez Sanchez guilty of inflicting corporal injury on a cohabitant.  (Pen. Code, § 273.5, subd. (a).[1])  Defendant also admitted a prior strike offense within the meaning of the three strikes law.  (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)  Following an unsuccessful motion to strike that conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), the trial court sentenced defendant to six years in prison.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offense.

1

On appeal, defendant contends the trial court abused its discretion by declining to strike his prior conviction under *Romero*. We conclude, to the contrary, that the trial court did not abuse its discretion.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Trial Evidence

Police responding to a domestic violence call to an apartment complex on the night of July 2, 2012, met several residents outside. A neighbor told officers she heard an argument and saw defendant grab his live-in girlfriend, Alysia Acosta, by her shirt and by her hair, hit her in the face and back, and throw her to the ground. Then she heard Acosta say, " 'My arm is broken.' " That same neighbor testified at trial that defendant mistakenly believed another man had grabbed Acosta inappropriately and when Acosta tried to stop defendant from confronting the man, he assaulted her. The neighbor saw defendant grab Acosta by her collar, strike her, and pull her toward their residence, telling her to "[g]et back in the house. Get back in the house." Acosta screamed to the neighbor to get her children. After defendant and Acosta were inside, the neighbor heard defendant yell, "B-i-t-c-h, get out of my house. I don't want you anymore."

The neighbor's teenage son told officers he heard Acosta yelling and saw defendant "throwing" Acosta around, and pushing her to the ground.

Officers who arrived at the scene saw Acosta holding her arm in pain. Acosta later learned her elbow was broken.

When an officer asked defendant how Acosta was injured, defendant said he and Acosta tripped over a bush near their apartment.

Acosta spoke little to police at the scene. At the hospital, Acosta said she hurt her arm when she tripped over the apartment threshold after defendant tried to guide her toward the open door. A few days later, Acosta contacted police and told them she hurt

2

her arm by tripping over a rug inside the apartment during an altercation between defendant and his sister.

Defendant was charged with inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)). The information also alleged he personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) and alleged defendant suffered a prior strike conviction in 2006 for assault with a deadly weapon.

At trial, Acosta testified she broke her arm when she tripped over a rug during an altercation between defendant and his sister. According to Acosta, defendant was trying to protect Acosta from his sister, who was trying to pick a fight.

### Verdicts

The jury found defendant guilty of inflicting corporal punishment on a cohabitant, but could not reach a verdict on the allegation defendant personally inflicted great bodily injury on Acosta. Defendant admitted having suffered a 2006 conviction for assault with a deadly weapon.

### The *Romero* Motion

Defendant moved to strike his prior assault conviction pursuant to section 1385 and *Romero* so that he might qualify for probation. His motion stressed that defendant is a devoted family man and the sole source of support for Acosta and their three children (two biological children and a child of Acosta's who lives with them); one of the children has a serious medical condition.

In denying the motion, the trial court expressly stated that it considered the facts of the current case and defendant's background, character, prospects, and what he had done in the interim between the strike offense and the current offense. The court noted that defendant had two prior felony convictions involving violence, one in 2004 and the other in 2006, and that defendant was still on parole from the later offense when he committed the current offense. The court also noted that defendant had been convicted of petty theft and placed on probation after being charged in the instant case. The court stated,

3

"There's absolutely nothing I can find that would lead me to conclude that the Defendant, based on these charges, compared to his prior convictions, his character, or his prospects, has made any changes in his life." The court further stated, defendant "has suffered three convictions now for violent crimes. He was on parole at the time of this charge. And I just can't find anything . . . that would cause me to find that [defendant's] case is outside the intention of the three-strikes legislation."

## DISCUSSION

Defendant claims the trial court abused its discretion by declining to strike his prior strike conviction under *Romero*. We disagree.

### I. Applicable Law

A trial court has the authority to dismiss a strike conviction allegation in the interests of justice under section 1385, subdivision (a). (*Romero*, *supra*, 13 Cal.4th at p. 504.) We review a trial court's refusal to dismiss strike allegations under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

4

In deciding whether to exercise its discretion to dismiss strike allegations, courts must determine whether the defendant should be deemed outside the spirit of the three strikes law and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) In making this determination courts must consider three circumstances: (1) the nature and circumstances of his present felony; (2) the nature and circumstances of his strike offense; and (3) the particulars of the defendant's background, character, and prospects for the future. (*Id.* at p. 161.)

## II. *Williams* Analysis

### A. The Nature and Circumstances of the Present Felony Offense

The current offense involved violence. And it took place while the victim's three children were present.

Defendant argues in his brief on appeal that his current offense was the result of "an uncontrolled burst of anger as opposed to a premeditated act" that was the result of his mistaken belief another man had touched the victim inappropriately. His anger was only redirected toward the victim when she tried to stop defendant from confronting the man. Defendant also points out that according to the probation report, he had been drinking the night that this incident occurred.

These circumstances provide little mitigation. Moreover, defendant told the probation officer who prepared the presentence report that the victim tripped and hurt her arm while defendant was fighting with his sister. According to the presentence report, "defendant adamantly claims he never hit or hurt the victim." It appears that at the time of his presentence report was prepared, defendant had no remorse for what he now says was a nonpremeditated, uncontrolled burst of anger.

### B. The Nature and Circumstances of the Strike Offense

While neither the prosecution's opposition nor the probation report provide any details about the facts underlying the strike offense, it is clear that it was a crime of

5

violence involving a weapon. Defendant stresses that the strike conviction occurred when defendant was only 19, but the offense was actually fairly recent. Defendant was not yet 26 years old when he committed the instant violent act.

### C. Defendant's Background, Character and Prospects for the Future

Although the complaint alleged only one prior strike conviction, defendant has twice been convicted of assault with a deadly weapon (§ 245, subd. (a)(1)). After the first conviction in 2004, defendant was placed on three years' probation.[2] As defendant notes, defendant had just turned 18 at the time.

The charged strike offense is defendant's second assault with a deadly weapon conviction. It was committed in 2006 while defendant was still on probation for the 2004 conviction. For the 2006 conviction, defendant was sentenced to prison for five years. The crime of violence in the instant case was committed while defendant was on parole from his 2006 conviction. A few months prior to his conviction in this case, defendant was convicted of petty theft (§ 484) and received probation.

Defendant offered several letters in support of his motion to strike under *Romero* which describe defendant as a good man devoted to his girlfriend and their children. These facts do little, however, to support his argument that he falls outside the spirit of the three strikes law. Rather, he has demonstrated a pattern of violent behavior, sustaining a second felony assault with a deadly weapon conviction less than three years after his first conviction for the same offense, and then committing the instant act of violence while he was still on parole after his five-year prison commitment.

---

[2] The prosecutor's opposition to defendant's *Romero* motion in the trial court does not provide any information about the facts underlying this conviction. Likewise, the probation report is silent on this matter.

### III.  Conclusion

The purpose of the three strikes law is to provide increased punishment for recidivist offenders who, by reason of their criminal history for violent or serious felonies, have demonstrated that they are neither rehabilitated nor deterred from further criminal activity.  (*People v. Davis* (1997) 15 Cal.4th 1096, 1099; *People v. Leng* (1999) 71 Cal.App.4th 1, 14.)  Defendant has shown he remains a violent individual, despite parole supervision.  He is clearly well within the spirit of the three strikes law, and the trial court did not abuse its discretion in denying his *Romero* motion.

### DISPOSITION

The judgment is affirmed.

           MURRAY       , J.

We concur:

     MAURO      , Acting P. J.

     HOCH      , J.