Filed 11/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ANTONIO YANEZ,<br><br>     Defendant and Appellant. | A156074<br><br>(Alameda County<br>Super. Ct. No. 17CR008001) |

Defendant William Antonio Yanez, sentenced to nearly six years in prison, challenges the trial court's refusal to grant him conduct credits for the time he spent in an electronic monitoring program on home detention prior to his sentencing. No statute provides for such credits. However, he contends that because recent amendments to Penal Code section 4019 have made conduct credits available to individuals who are placed on electronic home detention *after* imposition of sentence (see *id*., subd. (a)(7)), denying him eligibility for conduct credits for the time he spent on in-home detention[1] *before* he was sentenced violates equal protection. We agree.

We hold that this disparity in eligibility for conduct credits between pretrial and post-judgment electronic monitoring home detainees violates equal protection, and therefore that the pre-sentencing time Yanez spent on home detention is eligible for conduct credits notwithstanding the Legislature's failure to provide for them in section 4019.[2]

---

    [1] For purposes of this opinion, we use the terms "in-home detention" and "electronic monitoring program" interchangeably.

    [2] Undesignated statutory references are to the Penal Code.

1

# BACKGROUND

## I.

### *Statutory Background:  Home Detention*

Briefly for context, two statutes governing home detention are relevant here. Penal Code section 1203.018 authorizes counties to offer a program under which pretrial detainees being held in a county jail or correctional facility may participate in a home detention program under specified conditions.  (*People v. Raygoza* (2016) 2 Cal.App.5th 593, 599; § 1203.018, subd. (b).)  The statute applies to "inmates being held in lieu of bail."  (§ 1203.018, subd. (a).)  It has been construed to apply when a pretrial detainee is required to submit to home confinement in a local electronic monitoring program as a condition of a reduction in bail.  (See *Raygoza*, at pp. 599–601.)

Penal Code section 1203.016, by contrast, governs home detention post-sentencing.  It authorizes counties to create electronic home detention programs in which certain inmates may be placed "during their sentence," under specified conditions, "in lieu of confinement in a county jail or other county correctional facility or program." Those conditions are substantially similar to the conditions applicable to pretrial detainees released on home detention under section 1203.018, including that the participant "remain within the interior premises of his or her residence during the hours designated by the correctional administrator"; "admit any person or agent designated by the correctional administrator into his or her residence at any time" for purposes of verifying compliance with the conditions of detention; and allow the correctional administrator, without further court order, to immediately retake the participant into custody to serve the balance of his or her sentence if the electronic monitoring devices are unable for any reason to properly perform their function or if the person fails to remain within the place of detention, willfully fails to pay fees to the provider of the electronic home detention services or for any other reason no longer meets the statutory criteria for home detention.  (Compare § 1203.016, subd. (b)(1)–(4) with § 1203.018, subd. (d)(1)–(4).)

## II.

### *Factual Background*

Charged in connection with an incident in March 2017, Yanez pled no contest to possessing more than one kilogram of methamphetamine for sale (Health & Safety Code, §§ 11378; 11370.4, subd. (b)(1)) and admitted a prior strike conviction.

The court had imposed home detention subject to electronic monitoring as a condition of reducing Yanez's bail from $480,000 to $100,000.  By the time of his sentencing hearing, Yanez had spent 555 days on electronic home detention, in a program authorized by Alameda County.

The trial court sentenced Yanez to serve five years and eight months in state prison.  Although the court granted him custody credits for his 555 days of home confinement (see § 2900.5, subd. (a)), it deemed him ineligible for conduct credits.  It rejected Yanez's argument that denying him eligibility for conduct credits violated the constitutional guarantee of equal protection because post-judgment home detainees are eligible for conduct credit under section 4019.  This appeal followed.

## DISCUSSION

" 'The constitutional guaranty of equal protection of the laws has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness.  [Citations.]'  [Citation.]  The concept recognizes that persons similarly situated not be treated differently unless the disparity is justified." (*People v. Leng* (1999) 71 Cal.App.4th 1, 11 (*Leng*).)

Thus, " '[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Leng*, *supra*, 71 Cal.App.4th at 13, quoting *In re Eric J.* (1979) 25 Cal.3d 522, 530.)  "Under the equal protection clause, we do not inquire whether persons are similarly situated for all purposes, *but whether they are similarly situated for purposes of the challenged law*." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53; accord, *People v. Edwards* (2019) 34 Cal.App.5th 183,

198.)  If there is such a disparity, then we must proceed to decide which level of scrutiny to apply.

Here, the parties disagree as to whether pretrial and post-sentence detainees are similarly situated with respect to the statutes governing home detention.  They also disagree as to whether, assuming they are similarly situated, the disparity in their treatment must be evaluated under strict scrutiny or under the more deferential rational basis standard.  (Compare, e.g., *People v. Sage* (1980) 26 Cal.3d 498, 506, 508, fn. 6 [applying strict scrutiny to decide whether denying conduct credit for pretrial jail time violated equal protection]; *People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1168 [applying strict scrutiny to decide whether denying pretrial custody credits for house arrest violated equal protection; "When the equal protection issue involves fundamental interests, such as liberty, our courts have required that the state establish that it has a compelling interest in making such classifications"] with *People v. Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-55 [rational basis review of equal protection challenge to denial of conduct credits under amendment to section 4019].)  It is unnecessary to decide which level of scrutiny applies because pretrial and post-sentence detainees who have served time under home detention are similarly situated for purposes of evaluating their eligibility to earn conduct credits, and the challenged disparity in their treatment does not survive even rational basis review.

Section 4019 governs conduct credits that may be earned for good behavior in local custody and other non-prison settings.  (See *People v. Brown* (2012) 54 Cal.4th 314, 317; compare Pen. Code, pt. 3, tit. 1, ch. 7, art. 2.5, § 2930 et seq.)  It provides for two days of conduct credit against a prisoner's period of confinement for every four days spent in actual custody:  one day of work time-credit (see § 4019, subd. (b)), and one day of credit for complying with applicable rules and regulations (*id.*, subd. (c)).  The statute declares the Legislature's intent "that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."  (*Id.*, subd. (f).)

The statute specifies multiple categories of detainees who are eligible to earn such credits. (See § 4019, subd. (a).) One situation, specified in subdivision (a)(7), is "[w]hen a prisoner participates in a program pursuant to Section 1203.016," i.e., a home detention program for post-judgment detainees. (§ 4019, subd. (a)(7).)[3] Section 4019 does not include pretrial[4] detainees on home detention pursuant to section 1203.018 among those who are eligible for conduct credits. (See § 4019, subd. (a).) Thus, it is evident from the statute that section 4019 applies to a prisoner who is placed on home detention post-judgment but does not apply to a pretrial home detainee such as Yanez. Neither party contends otherwise.

Section 4019 subdivision (a)(7), the provision giving conduct credit for time spent on post-judgment home detention, took effect on January 1, 2015. (Stats. 2014, ch. 612, §6.) Before this change in the law, the courts consistently rejected equal protection challenges by home detainees who sought to be deemed eligible for conduct credits that were statutorily available only to inmates or prisoners held in more restrictive settings. (See, e.g., *People v. Cook* (1993) 14 Cal.App.4th 1467, 1469-1470 [upholding denial of conduct credit to defendant placed in electronic monitoring program as condition of probation]; cf. *People v. Silva* (2003) 114 Cal.App.4th 122, 125 [holding defendant had no statutory right to conduct credit for pretrial time spent on in-home detention in a

---

[3] The other categories are prisoners confined in a local jail, industrial farm or road camp under a judgment of imprisonment (including a judgment of fine and imprisonment until the fine is paid) (§ 4019, subd. (a)(1)), as a condition of probation after suspension of either imposition or execution of sentence (*id.*, subd. (a)(2)), for contempt other than in a criminal case (*id.*, subd. (a)(3)), prior to sentencing for a felony conviction (*id.*, subd. (a)(4)), as a custodial sanction for violation of postrelease community supervision or parole (*id.*, subd. (a)(5)), or under a sentence imposed under section 1170, subdivision (h), which governs felonies punishable by an unspecified term (§ 4019, subd. (a)(6)). Also eligible are mentally incompetent defendants confined in a county jail treatment facility (§ 4019, subd. (a)(8); see also § 1367 et seq.), which was added effective January 1, 2019 (see Stats. 2018, ch. 1008, §5), and prisoners who participate in local work release programs (§ 4019, subd. (a)(7) [incorporating § 4024.2]).

[4] We use the word "pretrial" broadly here to include anyone serving in-home detention prior to sentencing.

county electronic monitoring program].) In particular, a pretrial home detainee such as Yanez had no viable equal protection claim to such credits, because post-judgment home detainees were not statutorily eligible for such credits either.

That was the holding of the Fourth District in *People v. Lapaille*, *supra*, 15 Cal.App.4th 1159, which involved a defendant who was confined to house arrest under conditions that were held to be "at least as confining" as those placed on electronic home detention pursuant to section 1203.016 "so that his house arrest was just as 'custodial.' " (*Lapaille*, at p. 1169.) *Lapaille*'s rationale was straightforward: "[i]n not receiving conduct credits for time spent on preconviction home arrest defendant will not be treated differently from those confined in electronic home detention programs. The latter group is not entitled to conduct credit . . . ." (*Id*. at p. 1172.) Under the legislative framework as it then stood, the purpose of conduct credits was understood as encouraging good behavior in more restrictive custodial settings. (See *id*. at pp. 1170-1173.)

*Lapaille* concluded that pretrial home detainees "are not similarly situated to those placed in more penally restrictive settings." (*Lapaille*, *supra*, 15 Cal.App.4th at p. 1172.) It explained that "those in such situations are subject to strict, regimented conduct regulations; need special incentives not to disobey prison rules or commit other crimes while incarcerated, especially assault crimes on other inmates; and are expected to engage in 'rehabilitative' activities. Defendant and others in his situation are not subject to strict regulation within their homes, but may dress and behave as they like, have constant visitors, indulge in family life and recreation; nor are they expected to participate in rehabilitative programs, or in defendant's case to work. They do not have to adhere to a strict code of penal institution conduct any more than do those on other types of nonpenal noncustodial O.R. release. Thus, the equal protection clauses of the state and federal Constitutions do not require that they receive conduct credits as incentives to behave properly." (*Id*. at pp. 1172-1173.)

As Yanez argues, though, "the difference in penological goals between pre-judgment and post-judgment conduct credits was eliminated for home detainees by the enactment of section 4019, subdivision (a)(7), which now gives conduct credits for time

6

spent on post-judgment home detention." In other words, Yanez argues, pretrial in-home detainees are similarly situated to post-judgment home detainees, and now that the Legislature has opted to make the latter eligible for conduct credits, equal protection principles compel that the former be eligible too.

The People do not address this contention. Instead, relying on pre-2015 cases decided in other contexts, and before the Legislature enlarged the category of custodial settings eligible for post-sentence conduct credit to include electronic monitoring home detainees, the People argue that pretrial and post-judgment home detainees are *not* similarly situated because the purpose and availability of sentencing credits (as the law formerly stood) differed with respect to pretrial and post-judgment detainees.[5] This is

---

[5] For example, the People rely upon decisions by the Supreme Court involving various questions of statutory interpretation that have arisen under the sentencing credit schemes that discuss distinctions between pretrial detainees and convicted defendants and the disparate goals of pretrial and post-sentence credit systems. (See *In re Martinez* (2003) 30 Cal.4th 29, 35-36 [prison inmate whose conviction is reversed on appeal not similarly situated to a pretrial detainee for purposes of calculating the accrual of conduct credits under section 2900.1 for prison time served prior to reversal]; see also *Martinez*, at p. 38 (dis. opn. of Kennard, J.) [noting that issue under review "is the correct interpretation and application of certain provisions of the California Penal Code" governing conduct credits]; *People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 36-37 [convicted felons whose state prison sentences have been remanded for reconsideration while in progress are not pretrial detainees eligible for credits under section 4019 for time spent in custody prior to resentencing but, rather, retain their post-sentence status and accrue credit under rules applicable to state prison inmates].)

The Court of Appeal decisions they cite are inapposite too. (See *People v. Saibu* (2011) 191 Cal.App.4th 1005, 1011-1012 [defendant held entitled to custody credits for time served in prison and jail awaiting resentencing on prior conviction; stating that "there are 'separate and independent credit schemes for presentence and postsentence custody' "]; *People v. Moore* (1991) 226 Cal.App.3d 783, 787 [no equal protection violation by denying conduct credit for time spent in alcohol recovery center as a condition of probation; those receiving alcohol treatment, unlike prisoners, did not face a fixed term for treatment and have their own incentives for good behavior]; *People v. DeVore* (1990) 218 Cal.App.3d 1316, 1320 [no equal protection violation by applying less favorable conduct credit formula to pretrial detainee than formula applicable to state prisoner participating in a qualified prison work program; "[a] prisoner who does not participate in a qualified work program is treated in exactly the same manner as a

their primary justification for the current legislative scheme. As Yanez says, what the People fail to explain "is how pre- and post-judgment defendants who are both on home detention, and not in custody, are not similarly situated for the purpose of conduct credit eligibility."

Pretrial home detainees such as Yanez who are placed in a statutorily authorized electronic monitoring program and their postjudgment counterparts are " 'sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.' " (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200, overruled on other grounds, *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 882 (*Johnson*); see, e.g., *Leng*, *supra*, 71 Cal.App.4th at pp. 12, 13 [adult offenders with a prior juvenile adjudication are similarly situated to adult offenders with a prior criminal conviction for same offense for purposes of analyzing equal protection challenge to disparity in their treatment under Three Strikes sentencing law].)

The Supreme Court's decision in *People v. Sage*, *supra*, 26 Cal.3d 498, which addressed an analogous disparity, sheds light on this. *Sage* held that the denial of conduct credit for *pretrial* jail time served by a convicted felon violated equal protection, because a convicted felon who served *no* jail time prior to being sentenced to state prison was statutorily entitled to conduct credit against his full sentence (under section 2931, for conduct credit earned while in prison) and so was a pretrial detainee who was eventually *convicted* of a misdemeanor and sentenced to jail (under section 4019). "Only the presentence detainee eventually sentenced to prison, the 'detainee/felon,' does not receive conduct credit against his full sentence, because he is denied conduct credit for his presentence confinement. It is the distinction between the detainee/felon and the felon who serves no presentence time that raises equal protection problems," the court said. (*Sage*, at p. 507.) In *Sage*, as here, the People sought to justify the disparity on the basis

---

detainee/felon" and so "[i]t seems clear that discrimination complained of does not divide those who make bail from those who cannot, but those who participate in prison rehabilitation programs from those who do not"]; *People v. Cook*, *supra*, 14 Cal.App.4th at pp.1469-1470.)

of rationales unique to pretrial detainees, but the Supreme Court summarily rejected those rationales because they were equally applicable to pretrial misdemeanant detainees, who *were* statutorily entitled to earn conduct credits for their pretrial jail time. (See *id*. at pp. 507-508.) "The inescapable conclusion is that the challenged distinction—between detainee/felons and felons who serve no presentence time—was not based on the grounds proposed. Accordingly, we will not further analyze these grounds." (*Id*. at p. 508.) It concluded, "the People have not suggested, nor has our independent research revealed, a rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons." (*Ibid*.) Thus, it held the defendant was entitled to conduct credit, if earned, even though section 4019 did not provide for it. (See *Sage*, at pp. 504, 508.) *Sage* was later codified, in 1982, in subdivision (a)(4) of section 4019, which makes conduct credits available to persons detained in jail before trial on felony charges. (*People v. Buckhalter*, *supra*, 26 Cal.4th at p. 36; § 4019, subd. (a)(4).)

*Sage* controls our analysis. Implicit in its holding was that pretrial felony *detainees* were similarly situated to felony *convicts* for purposes of earning conduct credits (as well as to misdemeanor pretrial detainees who were later convicted and sentenced to jail). Moreover, the fact that section 4019 now makes conduct credits available to pretrial felony detainees in local custody who are awaiting trial just as it does for felony convicts, undermines the People's contention that the challenged distinction between pretrial and postjudgment *home* detainees was "based on the grounds proposed" by the People in this case (*Sage*, *supra*, 26 Cal.3d at p. 508)—i.e., that pretrial and postjudgment sentencing credit schemes serve entirely different purposes. In either instance, conduct credit serves a similar purpose, presumably by encouraging those serving home detention to comply with the terms and conditions of that detention. To be sure, the threat of being returned to custody already provides such an incentive, and the Legislature could have declined to provide conduct credits to *anyone* serving home detention if it concluded conduct credit was unnecessary. But it did not. Rather it awarded conduct credit to convicted persons serving in-home detention while denying it to those serving in-home detention while awaiting trial and sentencing.

9

As in *Sage*, we can conceive of no legitimate, much less a compelling, reason for treating people participating in an electronic monitoring program on home detention while awaiting trial and sentencing differently for purposes of conduct credits than someone serving a sentence in an electronic monitoring program. Under the relevant statutes, both are subjected to similarly restrictive conditions and both are avoiding spending time in jail or other local custody. And the People point to no difference in the manner in which either category is confined. Even under deferential rational basis review, a statutory classification must be " 'rationally related to [a] "realistically conceivable legislative purpose[]," ' " not a " 'fictitious purpose[] that could not have been within the contemplation of the Legislature' " but is simply invented by the court. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 648; accord, *Johnson*, *supra*, 60 Cal.4th at p. 903 (dis. opn. of Werdegar, J.) [citing, inter alia, *Sage*].) The People have suggested none. As Yanez puts it, "[u]nder the current statutory framework, a pre-trial jail detainee and post-sentence jailed convict both receive conduct credits, but a pre-judgment home detainee and post-judgment home detainee are not given the same equal treatment. There is no legitimate reason for this to be so."

The People also proffer two somewhat technical reasons why Yanez's equal protection challenge has no merit, but again we are unpersuaded. First, the People attack the premise of Yanez's argument, contending that a defendant participating in an in-home detention program under section 1203.016 after conviction does *not* earn conduct credits while being monitored on home detention; instead, the People argue, such a defendant only becomes eligible to earn such credits on the same terms as other defendants when "he is *taken into custody* to serve the balance of his electronic monitoring." (Italics added.) This argument has no support in the text of either section 4019 or section 1203.016. Moreover, it is contrary to the plain terms of section 1203.016, which describes program participation as "an alternative to physical custody" (see § 1203.016, subd. (d)(2)) and authorizes local law enforcement officials to "retake the person into custody" to serve the remainder of their sentence in specified situations. (See § 1203.016, subds. (b)(4), (c).) These provisions indicate that a defendant who is

10

released from jail into an electronic monitoring home detention program is *not* in custody akin to physical confinement to jail or prison.

Second, the People also argue Yanez is not similarly situated to inmates who are released, postjudgment, on home detention under section 1203.016, because that statute does not apply to an inmate such as Yanez who is sentenced to state prison. This is a non-sequitur. Yanez is not arguing he is eligible for home confinement post-judgment. He is arguing that during the period that he was on electronic monitoring in lieu of being held in county jail prior to sentencing he was similarly situated to defendants on postjudgment home confinement under section 1203.016 for purposes of earning conduct credit.

Finally, we note that the People do not argue that pretrial conduct credits could not be applied retroactively to Yanez's sentence in any event, even if an equal protection violation were demonstrated. As that question is not before us, we deem it waived for purposes of this appeal and express no opinion as to the propriety of deeming an appellant retroactively eligible for conduct credits on the basis of an equal protection violation and assume for purposes here that such a disposition is warranted.

## DISPOSITION

We direct the trial court to calculate the amount of conduct credit for which Yanez is entitled under section 4019, amend the abstract of judgment accordingly and forward a certified copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

11

_____
STEWART, J.

We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.


*People v. Yanez* (A156074)

12

Trial Court:    Alameda County Superior Court

Trial Judge:    Hon. Jon R. Rolefson

Counsel:

Micah Reyner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Jeffrey M. Laurence, Assistant Attorney General, René A. Chacón, Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.