Filed 4/19/16  P. v. Alfrey CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREW CHARLES ALFREY,<br><br>    Defendant and Appellant. | B262979<br><br>(Los Angeles County<br>Super. Ct. No. MA063056) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Commissioner.  Affirmed.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant Andrew Charles Alfrey was convicted of exhibiting a deadly weapon to a police officer to resist arrest. He was sentenced as a second strike offender to an aggregate prison term of 13 years. On appeal, defendant argues that the trial court abused its discretion when it (1) denied his motion to strike his prior conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530 (*Romero*) (hereinafter *Romero* motion) and (2) imposed an upper-term sentence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE INFORMATION

As a result of a confrontation with a deputy from the Los Angeles County Sheriff's Department (LASD), defendant was arrested and charged in an amended information with assault upon a peace officer (Pen. Code,[1] § 245, subd. (c)) and exhibiting a deadly weapon to a police officer to resist arrest (§ 417.8) with a special allegation as to both counts that he had used a knife to commit the offense (§ 12022, subd. (b)(1)). The information also specially alleged that defendant had suffered one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and for purposes of a prior serious felony conviction enhancement (§ 667, subd. (a)(1)), and that he had served a separate prison term for a felony (§ 667.5, subd. (b)).

### B. THE TRIAL

On May 16, 2014, Deputy Joshua Bean responded to a call about an incident at a Target store in the City of Lancaster. After speaking to store employees, he approached defendant inside the store and asked his name. Defendant said his name was Jeremy Smith. Deputy Bean asked for identification, and defendant presented a driver's license bearing the name of Andrew Charles Alfrey. Deputy Bean requested that defendant accompany him and placed his hand on defendant's arm to escort him to the back of the store.

---

[1]     Statutory references are to the Penal Code.

2

As they walked, Deputy Bean attempted to guide defendant toward the back of the store. Defendant resisted by walking faster, ignoring the deputy's instructions, wriggling his body, and trying to pull his arm free. At some point, defendant broke away from Deputy Bean and turned toward him holding a knife. Defendant was standing directly in front of Deputy Bean, about three to four feet away. Defendant raised his right arm and briefly pointed the knife at the deputy before lowering his arm to his side. In response, Deputy Bean took two steps back, drew his service revolver, and ordered defendant not to move. Defendant yelled, "Fuck you. I'm not going to jail," and fled. Deputy Bean re-holstered his gun, reported the incident on his radio, and ran after defendant.

Deputy Bean pursued defendant outside the Target store into a nearby Salvation Army store. As he ran, defendant collided with several people, including a man holding a baby. Deputy Bean chased defendant as he ran outside the back of the Salvation Army store and saw him throw something toward the roof of the store. At that point, defendant stopped and complied with Deputy Bean's order to lie on the ground. Another deputy recovered a knife from the roof of the Salvation Army store.

Following his arrest, defendant was interviewed by Los Angeles County Sheriff's Deputy Jeremy Esswein after being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]. Defendant told Deputy Esswein that he pulled the knife from his pocket and showed it to Deputy Bean because he wanted to get away from the deputy. Defendant then retracted the blade and ran. Defendant explained that he threw the knife onto the roof because he did not want to receive additional custody time for having it in his possession.

At trial, defendant testified in his defense. He claimed that he fled from Deputy Bean because he wanted to dispose of the knife before surrendering. Defendant denied brandishing the knife. According to defendant, when he struggled to break away from Deputy Bean, the knife opened inside his pocket, causing the blade to be exposed. Because the knife was spring loaded, it opened easily. Defendant also testified that Deputy Bean never drew his gun or ordered him to remain in place. Defendant decided to flee because he feared the deputy would shoot him after he saw the knife.

3

The jury was unable to reach a verdict on the aggravated assault count, but convicted defendant of exhibiting a deadly weapon to a police officer to resist arrest and found he used a knife in the commission of that offense. In a bifurcated proceeding, defendant admitted the alleged prior felony conviction for dissuading a witness as a prior strike conviction. (§ 667.5, subd. (c)(20).)

## C.    THE SENTENCING HEARING

At the sentencing hearing, the trial court confirmed that it had read and considered defendant's *Romero* motion, the People's opposition to the motion, the sentencing memorandum filed by each party, and the probation officer's report. Both parties submitted without further argument on the motion and sentencing. The trial court denied the motion, selected the upper term of four years, and imposed an aggregate prison term of 13 years.

In denying the *Romero* motion, the court found that defendant's "pattern of assaultive behavior" was "particularly disturbing." The court noted that defendant was convicted of misdemeanor domestic violence in 2006 and aggravated assault and dissuading a witness in 2012. The court described the salient facts in the 2012 case: "Deputies were called to a residence in response to a domestic violence incident involving the defendant and his then girlfriend, whom he had choked and kicked. A neighbor came to her rescue, a male, and the defendant beat that man badly. When deputies arrived, they ordered the defendant to the floor and he refused to comply, clenching his fists and advancing toward one of the deputies. Taser had to be utilized twice due to the defendant's rage and anger. That aspect of the case is strikingly similar to his confrontation with the deputy in the current case." The court concluded: "Given these facts, it is apparent to the court that his prospects are not good to be law-abiding and it's clear to the court that he is certainly within the spirit of the three-strikes law intended to ensure longer sentences for repeat offenders. So I decline to dismiss based on *Romero*."

After denying the *Romero* motion, the court sentenced defendant. The court selected the upper term of four years for exhibiting a deadly weapon to resist a peace

4

officer. The court concluded that the upper term was warranted because defendant was on parole at the time of the offense, he performed poorly while on parole, the offense could have resulted in great bodily harm, and he was armed while committing the offense. The court doubled the term under the three strikes law and added five years for the prior serious felony conviction under section 667, subdivision (a)(1), for a total of 13 years in prison.[2]

## DISCUSSION

### A. DENIAL OF DEFENDANT'S *ROMERO* MOTION

Defendant asserts that the trial court abused its discretion in denying his *Romero* motion, claiming that he falls outside the spirit of the three strikes law based on his background, character, and prospects. This assertion overlooks the double deference we give when reviewing this decision: the one given to the sentencing norms expressed in the three strikes law; and the one given to the trial court's exercise of its discretion. When according the appropriate deference, we find no abuse of discretion.

#### 1. *The Legal Standards*

The California Supreme Court has held that "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) The limited power to depart from this norm is found in section 1385, subdivision (a), which vests the trial court with discretion to dismiss a qualifying strike conviction "in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at p. 530; accord, *People v. Williams* (1998) 17 Cal.4th 148, 158.)

The decision whether to grant a *Romero* motion requires an evaluation of whether a defendant is wholly or partially outside the spirit of the three strikes law, considering "the nature and circumstances of the defendant's present felonies and prior serious and/or

---

[2] Prior to sentencing defendant, the court denied his motion for a new trial. That ruling is not challenged on appeal.

violent felony convictions, and the particulars of his background, character, and prospects." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) It is the "extraordinary" case in which an eligible defendant can overcome the strong presumption in favor of sentencing under the three strikes law. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record . . . ' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

A trial court's decision to deny a *Romero* motion is reviewed for abuse of discretion. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376.) An abuse occurs only "in limited circumstances," such as where the court is "not 'aware of its discretion'" or considers "impermissible factors," or where the three strikes law would "'produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Id.* at p. 378.) We will not disturb the trial court's determination unless we find that the "court has acted irrationally or arbitrarily in refusing to strike a prior conviction allegation." (*Id.* at p. 377.)

2.     *The Trial Court's Decision*

In challenging the denial of his *Romero* motion, defendant contends that the trial court acted irrationally and arbitrarily because he has not engaged in a pattern of violent conduct and because his prior and current felony convictions did not involve particularly egregious behavior. His prior felony convictions, he claims, "could be characterized as an immature and emotionally-charged overreaction to being rejected by his former girlfriend." His current felony conviction, he continues, "while not negligible, was also not violent or devious."

Defendant minimizes his behavior. His reported violence dates back to 2006, when he was convicted of a misdemeanor for domestic violence. Several years later, in 2011, he attacked his girlfriend, who attempted to break up with him because of his increasing violence and her growing fear of him. Defendant responded by breaking

6

furniture and mirrors in the apartment. He then began pushing and hitting his girlfriend. He kicked her between the legs and choked her to the point where she was unable to breathe. When another man in the apartment came to her assistance, defendant punched and kicked him multiple times in the head and face, causing his nose to bleed profusely and discoloration around his nose and eyes. Defendant fled before a police officer arrived; but he returned 45 minutes later, entering the apartment by climbing through the living room window. The police officer, still in the apartment, retrieved his Taser gun and repeatedly ordered defendant to get down on the floor. Defendant instead clenched his fists and began approaching the officer, who eventually had to activate the gun. Even after being hit with Taser darts, defendant continued his aggression, causing the officer to activate the gun a second time.

Less than three years later, while still on parole, defendant committed the current offense. While being detained, he broke free from the deputy and drew a knife on him to avoid arrest, prompting the officer to draw his gun. When fleeing with the knife, defendant collided with nearby shoppers. He continued to flee into another store until he finally stopped after disposing of the knife. Contrary to defendant's claim on appeal, his conduct that day was violent and dangerous, as he endangered the safety of the officer and the shoppers in the stores.

Under these circumstances, the trial court acted well within its discretion in denying the *Romero* motion. The purpose of the three strikes law is to provide greater punishment for recidivists who, by reason of their criminal history, have shown that they are neither rehabilitated nor deterred from further criminality. (*People v. Davis* (1997) 15 Cal.4th 1096, 1099.) We cannot say that the trial court erred in finding that defendant fell within the spirit of this law.

## B.   IMPOSITION OF THE UPPER-TERM SENTENCE

When a determinate sentencing statute authorizes three possible terms of imprisonment, "the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "The court shall select the term which, in the court's discretion, best serves the interests of justice." (*Ibid.*) In exercising that discretion, the

7

sentencing court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).)[3] The existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 816; *People v. Osband* (1996) 13 Cal.4th 622, 728; see *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

In sentencing defendant to the upper term of four years for exhibiting a deadly weapon to a police officer to resist arrest, the trial court found four aggravating factors: (1) defendant was on parole when he committed the offense; (2) his prior performance on parole was unsatisfactory; (3) the crime involved the potential for great bodily harm; and (4) defendant was armed with a weapon when he committed the offense. Defendant contends that the third factor was factually unsupported and the fourth factor was legally impermissible. Defendant forfeited these issues by failing to raise them in the trial court. (*People v. Boyce* (2014) 59 Cal.4th 672, 730; accord, *People v. McCullough* (2013) 56 Cal.4th 589, 594-595.)

The contention also fails on the merits. The record does support the trial court's conclusion that the crime involved the potential for great bodily harm: he provoked a foot pursuit while running through stores with a knife and colliding with shoppers. In addition, the court properly relied on the fact that defendant was on parole at the time of the offense (rule 4.421(b)(4)) and that his prior performance on probation or parole had been unsatisfactory (rule 4.421(b)(5)).

Defendant is correct that the court erred in identifying defendant's use of a weapon as an aggravating factor since it was an element of the offense for which he was being sentenced. (See rule 4.420(d).) It is not reasonably probable, however, that he would have obtained a more favorable result in the absence of the error. (*People v. Calhoun* (2007) 40 Cal.4th 398, 410 ["'When a trial court has given both proper and

---

[3]     References to rule or rules are to the California Rules of Court.

improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper'"] (conc. opn. of Kennard, J.).)

## DISPOSITION

The judgment is affirmed.

BLUMENFELD, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.